**Russell O. CAMPBELL, Plaintiff,**

v.

**The TRIANGLE CORPORATION, a Delaware corporation, and Century Tool Company, Inc., a Delaware corporation, Defendants.**

**Civ. A. No. 70–786.**

United States District Court, E. D. Pennsylvania.

Jan. 27, 1972.

---

5. 397 F.2d at 398.

Melvin A. Bank, Bank & Minehart, Philadelphia, Pa., for plaintiff.

Morris R. Brooke, Drinker, Biddle & Reath, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

JOSEPH S. LORD, III, Chief Judge.

Plaintiff, a citizen of Pennsylvania, has brought this action for breach of contract and fraudulent inducement against Triangle Corporation ("Triangle") and Century Tool Company, Inc. ("Century"), both Delaware corporations. Century has its principal place of business in Pendel, Pennsylvania, while Triangle has its principal offices in Orangeburg, South Carolina.

Plaintiff alleges that as a member of a management group employed by Century Tool Company, Inc., a New Jersey corporation, Century Tool Company Contract Division, a New Jersey corporation, and

Custom Tool Company, Inc., a Pennsylvania corporation, he was a party to an agreement entered into with Fred T. and Betty L. Ueltzen on November 1, 1966 for the purchase of the outstanding capital of the three corporations which was owned by the Ueltzens. On March 12, 1968, plaintiff, as a member of the management group, and the Ueltzens entered into an agreement with Triangle in which Triangle agreed to purchase all the assets of the three corporations through a subsidiary (Century) which was to be formed. Plaintiff alleges that consideration to the management group for the purchase was the issuance of warrants to purchase the common stock of Triangle and five year employment agreements to be entered into by Triangle through its subsidiary. On March 16, 1968, plaintiff and other members of the management group entered into a further agreement which rescinded and cancelled the stock purchase agreement of November 1, 1966 with the Ueltzens. Plaintiff claims that he never received the stock warrants or entered into a five year employment contract with Triangle or Century and that his employment was terminated by Century as of January 1, 1970. Plaintiff seeks damages against Triangle and Century for breach of contract and for fraudulently inducing plaintiff to rescind the November 1, 1966 stock purchase agreement and to continue in the employ of Century.

Defendants have moved to dismiss on the grounds that: (1) the requisite diversity of citizenship between plaintiff and defendants does not exist; (2) Triangle was not properly served with process and the court lacks jurisdiction over its person; and (3) Triangle conducts no business activity within Pennsylvania and therefore venue is improper.

## I.

Plaintiff asserts jurisdiction under 28 U.S.C. § 1332 which provides in pertinent part:

"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different States; * * *."

This provision has been interpreted to require complete diversity between all plaintiffs and all defendants, i. e. each plaintiff must be able to sue each defendant. Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Section 1332(c) provides that a corporation is to be considered a citizen of

" * * * any State by which it has been incorporated and of the State where it has its principal place of business."

Century has its principal place of business in Pennsylvania and is therefore a citizen of Pennsylvania for purposes of determining diversity jurisdiction. Because plaintiff is also a citizen of Pennsylvania, complete diversity does not exist between plaintiff and all defendants.

Plaintiff seeks to avoid dismissal for lack of subject matter jurisdiction by asserting that the court can and should exercise pendent jurisdiction over the claim against Century. The doctrine of pendent jurisdiction was recognized by the Supreme Court in Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933) and was recently defined by the Court in United Mine Workers v. Gibbs, 383 U.S. 715, 725–726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) as follows:

" * * * Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *,' U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. * * * The state and fed-

·eral claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

"That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them * * *." (Emphasis in original; footnotes omitted)

Although the doctrine of pendent jurisdiction was initially applied only in cases in which a federal question formed the basis of the court's jurisdiction, in recent years the doctrine has been extended to apply to cases where federal jurisdiction is based on diversity of citizenship. Jacobson v. Atlantic City Hospital, 392 F.2d 149 (C.A.3 1968); Stone v. Stone, 405 F.2d 94 (C.A.4 1968); Hatridge v. Aetna Casualty & Surety Co., 415 F.2d 809 (C.A.8 1969). For the reasons set forth below, we have concluded that the doctrine of pendent jurisdiction is applicable in this case and that we therefore have jurisdiction over plaintiff's claim against Triangle and Century.

In three recent cases, Borror v. Sharon Steel Co., 327 F.2d 165 (1964); Wilson v. American Chain and Cable Co., 364 F.2d 558 (C.A.3 1966); and Jacobson v. Atlantic City Hospital, *supra*, the Third Circuit "has taken the lead in recognizing diversity jurisdiction over an entire lawsuit in tort cases presenting closely related claims based, in principal part at least, on the same operative facts and normally litigated together, even though

one of the claims, if litigated alone, would not satisfy a requirement of diversity jurisdiction." Jacobson v. Atlantic City Hospital, *supra*, 392 F.2d at 153. In Borror, the court held that where diversity of citizenship existed in a Pennsylvania survival action, the doctrine of pendent jurisdiction was applicable to give the court jurisdiction over an accompanying wrongful death action in which diversity was lacking. The court noted that Pennsylvania had a strong policy in favor of coupling wrongful death and survival claims in a single lawsuit and concluded that application of pendent jurisdiction in diversity cases would be fair, time saving and desirable.

In Wilson, the court held that in a diversity case in which the requisite jurisdictional amount was present in an action for personal injuries on behalf of a child but absent in the father's related claim for medical expenses, the court had jurisdiction over both actions under pendent jurisdiction. The court emphasized that considerations of judicial economy and convenience to litigants prompted it to view the litigation as a single action for purposes of diversity particularly when the state practice required the two actions to be redressed in a single suit.

Finally in Jacobson, the court held that where the facts giving rise to claims for medical malpractice against two defendants were interrelated, the court could consider the claim against one defendant as pendent to the claim against the other for purposes of establishing the jurisdictional amount. The court concluded that the claims against the defendant hospital and physician could be viewed as constituting a single "action" for diversity purposes because both claims arose out of a single injury sustained by a particular person and most of the operative facts were common to the coupled claims so that "in normal and most convenient and expeditious practice and procedure these claims would be tried together in a single lawsuit." (at 154). Affirming the trend begun in Borror, the court concluded that the doctrine of United

Mine Workers v. Gibbs, *supra*, should extend to diversity cases where the "claims * * * 'derive from a common nucleus of operative fact,' particularly where 'considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding. * * * ' " Jacobson v. Atlantic City Hospital, *supra*, 392 F.2d at 155, quoting United Mine Workers v. Gibbs, *supra*, 383 U.S. at 725, 86 S.Ct. 1130. *See also* Nelson v. Keefer et al., 451 F.2d 289 (C.A.3, 1971), n. 4.

■ The case before us presents a situation closely analogous to Jacobson. Plaintiff has asserted claims against two defendants, a parent corporation (Triangle) and its subsidiary (Century), for injuries arising out of the alleged failure of the defendants to perform obligations under an agreement entered into by Triangle to which plaintiff was a party. The defendants were closely associated in the venture which caused the alleged harm to the plaintiff, and most of the operative facts are common to the claims against both defendants. Judicial economy and avoidance of a multiplicity of suits would dictate that the claims be tried in a single lawsuit. In addition, the pendent claims against Century do not appear to raise difficult questions of state law or require extensive separate proof which would justify our exercising discretion not to hear the pendent claim.

■ We find no justification for distinguishing this case from Jacobson on the ground that it involves claims which fail to satisfy the complete diversity requirement rather than the jurisdictional amount. The Third Circuit first approved of extending pendent jurisdiction to diversity cases in Borror which involved lack of complete diversity. Moreover, the justification for the extension to diversity cases has been judicial economy and convenience and fairness to litigants in cases where closely related claims arising from the same operative facts would ordinarily be tried

in a single judicial proceeding. We can find no reason for confining this principle to diversity cases involving jurisdictional amount. Similarly, we find no justification for distinguishing this case from the Third Circuit decisions in Borror, Wilson and Jacobson on the ground that the present case primarily involves a breach of contract rather than a tort claim. We therefore conclude that we have jurisdiction over plaintiff's claims against both Triangle and Century, and we deny defendants' motion to dismiss for lack of subject matter jurisdiction.

## II.

Triangle claims that it was not properly served with process in this action, and therefore the court lacks jurisdiction over its person. Triangle initially argued that delivery of a copy of the complaint to the place of business of its wholly owned subsidiary, Century, did not effect service upon Triangle. In order to cure this defect, plaintiff petitioned this court and we granted plaintiff's motion to serve Triangle by substituted service upon the Secretary of the Commonwealth in accordance with the Pennsylvania Business Corporation Law, 15 Pa.Stat.Ann. § 2011, subd. B, which governs service upon foreign corporations which have done business in Pennsylvania. The district courts are authorized to serve process "in the manner prescribed by the law of the state in which the district court is held," F.R.Civ. P. 4(d) (7), and process was served in the manner set forth in § 2011, subd. B.

Triangle contends that it does not conduct any business in Pennsylvania, and we construe this assertion as a claim that service under § 2011, subd. B was improper because Triangle is not a foreign corporation which has done any business in Pennsylvania as required by § 2011, subd. B.

" * * * [D]etermination of the validity of service in federal actions under Rule 4(d) (7) depends on an appraisal by the federal court of the propriety of service under applicable

state statutes and rules." 2 J. Moore, *Federal Practice* ¶ 4.22[3] at 1133 (2d ed. 1970).

Section 2011, subd. B permits substituted service on "[a]ny foreign business corporation which shall have done any business in this Commonwealth \* \*" and section 2011, subd. C defines "doing business" as follows:

"For the purposes of determining jurisdictions of courts within this Commonwealth, the doing by any corporation in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business.'"

■ Whether or not a corporation is "doing business" in Pennsylvania is a matter of fact to be resolved on a case-by-case basis and not by the application of a mechanical rule. Wenzel v. Morris Distributing Co., 439 Pa. 364, 266 A.2d 662 (1970). From our review of the depositions and other exhibits introduced with respect to the present motion, we have concluded that Triangle has done business in Pennsylvania as defined by § 2011, subd. C and that service upon Triangle in accordance with § 2011, subd. B was therefore valid.

■ Triangle is a holding company and its only operations are the acquisition and ownership of other corporations which are engaged in the manufacturing business.[1] We find that Triangle's activities in negotiating and eventually entering into the agreement with the Ueltzens and the management group for acquisition of their respective interests in certain companies constituted the doing of acts in Pennsylvania for the purpose of realizing pecuniary benefit and for accomplishing an object, *i. e.,* the further expansion of Triangle's holdings in companies which manufacture mechanical tools and instruments. Triangle continued to do business in Pennsylvania after March, 1968 when it investigated and discussed the potential acquisition of various companies in the Commonwealth even though these negotiations failed to result in any actual acquisitions. In addition, we find that Triangle performs certain management functions for Century including regular consultation and review of policy decisions, and Triangle receives a monthly service fee from Century for public relations, stockholder relations, legal fees and consolidated corporate accounting statements. We therefore conclude that Triangle is doing business in Pennsylvania and that it was properly served in accordance with the Pennsylvania Business Corporation Law.

## III.

■ Triangle further asserts that venue is improper because Triangle conducts no business in Pennsylvania. Triangle misreads the venue statute which provides in part:

"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

\*    \*    \*    \*    \*    \*

"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." 28 U.S.C. § 1391

---

1. The 1969 Annual Report of Triangle describes the corporation's objective as building a major corporation engaged in manufacturing and marketing products for the industrial market, the retail hardware market and the automotive aftermarket through "developing and strengthening the consolidated companies internally and continuing to acquire corporations that manufacture and distribute complementary products that are or could be marketed through Triangle's distribution channels." (p. 5)

Plaintiff resides in the Eastern District of Pennsylvania and the claim arose here; therefore, venue is proper. Triangle apparently assumes that subsection (c) of the venue statute supercedes subsection (a) so that a corporation can only be sued where it is incorporated, licensed or doing business regardless of where all the plaintiffs in a diversity action reside. This reading of the venue statute is clearly erroneous. Subsection (c) defines a corporation's residence for purposes of venue; it does not limit venue, in a case where a corporation is a defendant, to the corporation's residence if the plaintiffs can satisfy the requirement of subsection (a) which was done in the case before us.