Concetta **GALLO**

v.

**YAMAHA MOTOR CORPORATION, U. S. A., Bruce Ott, Steven Polansky and Pocono West, a Pennsylvania Corporation.**

**Civ. A. No. 80–0366.**

United States District Court, E. D. Pennsylvania.

April 25, 1980.

Ronald W. Shipman, Easton, Pa., for plaintiff.

Joseph F. Leeson, Robert H. Holland, Bethlehem, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

A snowmobile in which plaintiff was riding in Carbon County, Pennsylvania, collided with an automobile and caused injuries for which she now seeks compensatory damages. Plaintiff included as defendants the manufacturer/seller of the snowmobile (Yamaha), the owner of the land where the accident occurred (Pocono West), the driver of the snowmobile (Ott) and the operator of the automobile (Polansky). Predicating jurisdiction on diversity of citizenship, plaintiff, a Pennsylvania citizen, admits that the individual defendants are citizens of Pennsylvania and that Pocono West is a Pennsylvania corporation. Yamaha, a California corporation with its principal place of business in California and the only diverse defendant, moves to dismiss the complaint on the grounds that the pleadings disclose a lack of complete diversity. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

To avoid dismissal, plaintiff urges the Court to exercise pendent jurisdiction over the claims against the three non-diverse defendants and relies principally upon *Campbell v. Triangle Corp.*, 336 F.Supp. 1002 (E.D.Pa.1972), in which the court exercised jurisdiction in a breach of contract action over a pendent state claim against a non-diverse defendant. However, this non-diverse defendant was a subsidiary corporation of the diverse defendant, and plaintiff had claimed that both defendants, acting in concert, breached the contract between the parties and fraudulently induced the plaintiff to rescind a stock purchase agreement. In fact, the court expressly noted that the defendants were "closely associated in the venture which caused the alleged harm to the plaintiff". *Id.* at 1006.

In contrast, plaintiff's claims in the case at bar against the diverse defendant Yamaha sound in strict liability under the Restatement of Torts 2d, § 402 A and § 402 B as well as negligence in the design, inspection and preparation for public use of the snowmobile. Plaintiff based her claims against the non-diverse individual defendants on negligence in the operation of the respective vehicles. Against Pocono West plaintiff alleged negligence in the maintenance of a private road. True, plaintiff's claims all arise from one accident which occurred in January 1978, but each defendant acted independently of the others. Therefore, unlike *Campbell*, the liability of one party will not affect determination of another's. For example, plaintiff's claim against Yamaha is separate from her claim against Pocono West. Whether Yamaha manufactured a defective vehicle will not depend on whether a jury finds that Pocono West negligently maintained a private road. Therefore, the present situation is also unlike one where a defendant attempts to implead a non-diverse third-party defendant whose relationship to the primary lawsuit is not only factually but also legally relevant; under these circumstances the liability of the defendant may well turn on presence or absence of the third-party defendant. *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Likewise, proof of lia-

bility will vary significantly among these defendants. Finally, the question of Yamaha's liability may become the ancillary question at trial while the liability of the non-diverse party may become the principal inquiry.

■ More importantly, where a plaintiff who properly invokes federal jurisdiction over one defendant asks a federal court to assume jurisdiction over a claim against a party with no independent basis of jurisdiction "a federal court must satisfy itself not only that Article III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or *by implication* negated its existence". *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) (emphasis added). Assuming *for* the moment that Article III would permit the exercise of jurisdiction under the circumstances, clearly Congress has manifested an intent to constrict federal diversity jurisdiction. In 1958, for example, when Congress revised the general diversity statute, the amendments restricted rather than enlarged federal diversity jurisdiction by increasing the jurisdictional amount and conferring dual citizenship upon corporations. *See* 2 U.S.Code Cong. & Admin. News, p. 3099 (1958).

■ Moreover, the Supreme Court has indicated that

it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to [implead] an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second

defendant 'derive from a common nucleus of operative fact'. True, the same considerations of judicial economy would be served insofar as plaintiff's claims 'are such that he would ordinarily be expected to try them all in one judicial proceeding . . . .' But the addition of a new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress.

*Aldinger v. Howard*, 427 U.S. at 14–15, 96 S.Ct. at 2420. Although the Supreme Court decided *Aldinger* within the framework of 42 U.S.C. § 1983 and 28 U.S.C. § 1343, the reasoning and analysis therein apply to plaintiff's present claims brought into federal court under 28 U.S.C. § 1332(a). *See Owen Equipment & Erection Co. v. Kroger, supra.* If plaintiff had both federal and state claims against Yamaha which arose out of the snowmobile accident, exercise of pendent jurisdiction over the state claims would be appropriate. But here, plaintiff properly invoked federal jurisdiction over Yamaha only and seeks to press against three other defendants state-law claims over which there is no independent basis of federal jurisdiction. As noted above, the claims against the non-diverse defendants arise from one accident which generated the claims of the diverse defendant. Under these circumstances the potentially common nucleus of operative fact between the claims will not defeat the acknowledged policy of "non-sympathy [for] expanding federal jurisdiction in diversity cases. . . Public policy requires that federal courts should not . . . widen federal diversity jurisdiction". *Trail v. Green*, 206 F.Supp. 896 (D.N.J.1962). *See also McCoy v. Siler*, 205 F.2d 498 (3d Cir.), *cert. denied* 346 U.S. 872, 74 S.Ct. 120, 98 L.Ed. 380 (1953), *Pearce v. Pennsylvania Railroad*, 162 F.2d 524 (3d Cir. 1947), *Lang v. Windsor Mount Joy Mutual Insurance Co.*, 487 F. Supp. 1303 (E.D.Pa.1980), Fed.R.Civ.P. 82.[1]

---

1. Although relevant, we shall not consider pending legislation designed to further limit and indeed abolish diversity jurisdiction.

Moreover, assuming pendent jurisdiction over state claims requires exercise of the Court's discretion; plaintiff can assert no right thereto. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), *Schultz v. Cally*, 528 F.2d 470 (3d Cir. 1975). Although the doctrine applies to actions based upon diversity as well as federal question jurisdiction, *Jacobson v. Atlantic City Hospital*, 392 F.2d 149 (3d Cir. 1968), the rule of complete diversity has not been jettisoned. *Seyler v. Steuben Motors*, 462 F.2d 181 (3d Cir. 1972).

 Alternatively, plaintiff urges the Court to dismiss only the non-diverse defendants and to retain Yamaha in this federal action. True, a party may be dropped to achieve diversity if his presence is not essential to a just adjudication. *Prescription Plan Service Corp. v. Franco*, 552 F.2d 493 (2d Cir. 1977), but the Court may neither disregard the citizenship of indispensable parties, *Schuckman v. Rubenstein*, 164 F.2d 952 (6th Cir. 1947), *Codagnone v. Perrin*, 351 F.Supp. 1126 (D.R.I.1972), nor a dispensable party who is properly joined. *Chicago, R. I. & P. Railroad v. Dowell*, 229 U.S. 102, 33 S.Ct. 684, 57 L.Ed.2d 1090 (1913). However, even if the citizenship of the non-diverse defendants is disregarded, to dismiss them and to retain Yamaha would contravene the thrust of plaintiff's principal argument that the claims in this kind of tort action should and ordinarily would be tried together.

Interestingly, Yamaha, the only diverse defendant, is the party who has moved to dismiss. Traditionally, Yamaha, as the "foreign" defendant, was the party which the federal court purported to "protect" from local bias. *Burgess v. Seligman*, 107 U.S. 20, 2 S.Ct. 10, 27 L.Ed. 359 (1883), *Bank of the United States v. Deveaux*, 9 U.S. (5 Cranch) 61, 3 L.Ed. 38 (1809). *See also* 2 U.S.Code Cong. & Admin.News, pp. 3102, 3104 (1958). Since Yamaha is content to adjudicate plaintiff's claims in state court, since the non-diverse defendants must be sued there, since Pennsylvania law will determine the rights and obligations of all parties, since the relief plaintiff seeks is clearly available in state court and since a state court action has been filed, little justification remains to adjudicate the controversy in federal court.

Accordingly, Yamaha's motion to dismiss will be granted. Without any diversity between plaintiff and the other defendants, the Court *sua sponte* notes the absence of diversity jurisdiction and will dismiss them as well.