John G. **BOOKOUT**, as receiver of Modern Home Life Ins. Co.

v.

**ATLAS FINANCIAL CORP.** et al.

Civ. A. No. 74–302 A.

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 20, 1974.

Warren W. Wills, Jr., Atlanta, Ga., Levine, Fulford, Pope, Levine & Minisman, Birmingham, Ala., for plaintiff.

Warren A. Rosser, Chamblee, Ga., Walter M. Henritze, Jr., Atlanta, Ga., Charles M. Crook, Montgomery, Ala., J. Roger Thompson, Atlanta, Ga., H. A. Stephens, Jr., Atlanta, Ga., Perry S. Bechtel, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is a diversity action to recover for defendants' alleged default on certain notes issued as part of a reinsurance agreement entered into by two Alabama insurance companies. One of these companies, Modern Home Life Insurance Co., plaintiff herein and holder of the notes, is currently in receivership in the State of Alabama. On September 13, 1974, this court granted the motion of John G. Bookout, Insurance Commissioner of Alabama and receiver of Modern Home, for substitution as plaintiff in this action. In effect then this is an action by the Insurance Commissioner of the State of Alabama to secure payment of the notes in issue, face value of $5,000,000.-00, in order to protect the interests of the approximately 120,000 policy holders of Modern Home. In light of the fact that the defendant makers of the notes are alleged to be virtually insolvent, the action is primarily an effort to envoke the equitable jurisdiction of this court to enforce certain security agreements executed to secure payment of the notes.

■ The facts of this case are by no means clear and apparently involve various complex transactions and manipulations by the various parties to this action and by certain individuals and entities not parties to this action. Although all the evidence in this regard is not yet before the court, the following historical analysis of some of the transactions underlying this suit has been provided by the plaintiff:

Upon information, in December, 1971, Atlas Financial Corporation was . . . . [acquired] by Atlas United Financial Corporation which was owned by Public National Life Insurance Company which was in turn owned by United Security Holding Company. *Atlas United, Public National and United Security were all controlled by James M. Fail ("Fail")* . . . . Fail and A. Townsend, through the entities they controlled, caused Modern Home Life Insurance Company, then owned by Hooker-Taylor Land Company, Inc. *and controlled by Fail,* to purchase all of the outstanding capital stock of [a wholly owned subsidiary of Public National] in exchange for a note from Modern Home in the amount of $6,130,547. Additionally, Atlas United issued two bearer notes to Public National and United Security [face value $5,000,000] . . . for which the stock of Public National was transferred to Atlas Financial Corporation [Atlas]. The apparent result of the foregoing being that Public National owned all of the stock of Atlas United, which in turn owned all of the stock of Atlas Finan-

**1340**

cial, which in turn owned all of the stock in Public National. At or about the time of . . . March and April of 1973, a reinsurance agreement was entered whereby Public National would reinsure into Modern Home insurance policies with a reserve liability of $12,160,547.00. In conjunction with this transaction Modern Home received the return of its $6,130,547 capital note and the $5,000,000 Atlas collateral notes (the subject of this action) which were reissues of the [bearer notes issued by Atlas United to Public National and United Security].

(emphasis added). The various transactions described in this paragraph are presently the subject of a pending action in Alabama to recover for alleged common law fraud and fraud under the Securities Exchange Act of 1934. *Moore v. Fail,* Civil Action No. 73–P–1199S (N.D. Ala.). The salient facts regarding the security agreements in issue are described by plaintiff as follows:

The instant action is upon the $5,000,000 Atlas notes and the security agreements pursuant to which Modern Home was granted a security interest in certain collateral consisting of notes receivable by Atlas, which notes receivable were themselves secured by first or second mortgages upon real property. The collateral was alleged to have a face amount of $12,000,000. The security interest of Modern Home was second only to a security interest granted to Commonwealth Financial Corporation to secure a loan in the original amount of $3,500,000 made to Atlas United. . . . Commonwealth claimed a default on the part of Atlas United and Atlas and filed suit against Fail, Atlas United and Public National in the Eastern District of Pennsylvania, which suit resulted in the entry of a judgment against Atlas United and Public National in the amount of $1,400,000. This judgment was allegedly "purchased" by First National [one of the defendants in the present action].

Thus, this action is basically an effort to enforce the security agreements executed by Atlas and Modern Home by invoking the equitable powers of this court to compel transfer of the $12,000,000 in collateral from defendant First National Mortgage & Discount Co., Inc., alleged to be presently in possession of the collateral, to plaintiff. As such, the action is founded on Article 9 of the Uniform Commercial Code, Ga.Code Ann. § 109A–9–101 et seq. The eventual disposition of this case will involve complex questions of law and fact relating to the nature of the security interests in issue, perfection of those interests, competing priorities in the collateral, the nature of the collateral, and the effect of the transfers of the collateral upon the various competing interests of the parties involved. Notwithstanding the complexities of these questions, resolution of this matter is within the equitable jurisdiction of this court. *See* Clark Equipment Co. v. Armstrong Equipment Co., 431 F.2d 54 (5th Cir. 1970), cert. denied, 402 U.S. 909, 91 S.Ct. 1382, 28 L.Ed.2d 650 (1971) (Federal courts may enforce Article 9 security interests by well-recognized equitable principles).

On September 13, 1974, this court conducted a hearing into this matter in which counsel for the parties asserted and discussed many of the factual contentions described above. Rather than commence an extensive evidentiary hearing in this matter at that time, the court determined that in light of the complex circumstances, this case might be appropriate for the appointment of a receiver to conserve the collateral in issue pending resolution of this dispute. The court determined that "[a]ny hardship or inconvenience to defendants is greatly outweighed by the Court's interest in preserving the subject assets and the status quo and protecting the Plaintiff against possible irreparable loss." Accordingly, the court issued an order temporarily restraining defendants from transferring, encumbering, conveying or expending the collateral or from taking any action which would tend to diminish

the collateral. This order also granted defendants four days in which to file briefs or other pleadings in opposition to the appointment of a receiver. Defendant First National has filed a brief in opposition to such appointment, and this issue is presently before the court.

Before reaching the merits of the issue of appointment of a receiver *pendente lite,* this court takes note of the fact that the brief of defendant First National contains several factual allegations which further amplify this dispute. These allegations indicate that the collateral in this case has now come full circle, in that it has apparently been pledged to United Security to secure a loan from United Security to First National to enable First National to purchase an assignment of the aforementioned judgment obtained by Commonwealth Financial Corp. against Atlas United, together with an assignment of Commonwealth's right, title and interest in the collateral that is the subject matter of this suit. As noted above, United Security, allegedly owned by James M. Fail, is the holding company which owns Public National Insurance Co., the company that executed the reinsurance agreement which resulted in the transfer of the $5,000,000 in notes from Atlas to Modern Home. Thus the collateral, originally and allegedly still "owned" by Atlas Financial Corp., a company allegedly controlled by James M. Fail, through Atlas United Financial Corp. has now in effect been transferred in a series of questionable transactions to another company *also owned by Mr. Fail, United Security.* Although it is possible that these transfers were consummated for legitimate business purposes, it is equally possible that they were designed merely to preserve the collateral for its original owner, despite intervening insolvency and default on the notes secured by the collateral, by cutting off the rights of Modern Home. If not fraudulent, these actions are of doubtful validity; and, in any event, in light of the fact that the collateral is alleged to be valued at $12,-000,000, it is questionable whether or not Commonwealth, First National or United Security, by enforcing their allegedly superior security interest, will cut off Modern Home's interest in the excess proceeds of that security. Defendant First National in its brief in opposition to the appointment of a receiver in effect admits as much:

> While the collateral in this case has been transferred repeatedly, Atlas has always owned it. What Commonwealth, what Modern Home Life Insurance Company and what First National has [sic] is a security interest and a security interest only. . . . First National's security interest in the collateral is only approximately $1,600,000 as compared to Modern's $5,500,000 interest.

This court agrees with these contentions and this court further believes that to ensure that Modern Home's interest is adequately protected, a receiver should be appointed to take charge of, service and conserve the collateral, pending a final ruling on the efficacy of the competing interests in the collateral and the extent of those interests.

In opposing the appointment of a receiver in this case, defendant First National correctly contends that receivers should only be appointed in exceptional circumstances and that a receivership is not an end in and of itself. *See* Kelleam v. Maryland Casualty Co., 312 U.S. 377, 61 S.Ct. 595, 85 L.Ed. 899 (1941); Tucker v. Baker, 214 F.2d 627 (5th Cir. 1954); C. Wright & A. Miller, Federal Practice and Procedure § 2983 (1973). However, it is equally true

> that [where] there probably has been fraudulent conduct, and there is imminent danger of the property being concealed, lost or diminished in value, legal remedies are not adequate, and the harm to the movant by denial would be greater than that to the opposing parties on appointment, the appointment should be granted.

Haase v. Chapman, 308 F.Supp. 399 (W.D.Mo.1969). This case is particular-

ly instructive in the present instance. Basically, the *Haase* case was an effort to collect on a judgment. Plaintiff, the judgment creditor, alleged that the judgment debtor had obtained a note from a third party with a face value in the approximate amount of the judgment. Plaintiff alleged that the note was either in the hands of the defendant or had been assigned to a relative of the defendant. Defendant in effect admitted that the note had been assigned and contended that since the assignee of the note was not subject to the jurisdiction of the court, a receiver should not be appointed. The court disagreed. Noting that the court had jurisdiction over the place of payment of proceeds of the note, jurisdiction over the maker of the note and jurisdiction over the collateral securing payment of the note, the court concluded as follows:

> The appointment of a receiver *pendente lite* will not foreclose [the assignee's] interest, if any, in the bearer note. Adequate process will be issued to permit him and all others to assert their views. The receivership will only preserve the property pending the outcome of the suit.

*Id.* at 404–05. The court went on to find certain "badges" of fraud deemed sufficient to raise an inference that the transfer may have been fraudulent, thereby justifying the appointment of a receiver to collect and retain all proceeds payable under the note until further order of the court.

These same factors appear in the present case; although there is a significant difference in degree. Rather than a single note evidencing a debt between private parties, this action involves over forty notes, in the face amount of $5,000,000, the proceeds of which will in effect inure to the benefit of the policyholders of Modern Home, assuming of course Modern Home is eventually able to prevail on the merits of this action. Similarly, the various transfers and financial manipulations in this case, although not direct evidence of fraud, raise a sufficient inference of fraud to indicate to this court that if affirmative protective measures are not implemented immediately, the collateral in question may be further transferred or dissipated to the irreparable detriment of plaintiff herein and the thousands of innocent bystanders plaintiff represents. The appointment of a receiver in such circumstances is not a final disposition of this matter by any means. Such appointment only serves to preserve the immediate status quo and protect the interests of all the parties who may be involved:

> [I]t is the purpose of a receivership to prevent injury to the thing in controversy and to preserve it, pendente lite . . . for the security of all parties in interest, to be finally disposed of as the court may direct. In brief, the purpose of a receivership is the preservation and proper disposition of the subject of litigation. The appointment of a receiver certainly is not made for the purpose of destroying the rights of persons, but rather, that their rights may be made more secure.

65 Am.Jur., Receivers § 3 at 841 (1972).

■ As a final matter, First National contends that the evidence in this action is simply insufficient to warrant the appointment of a receiver. This contention is without merit. Although this court has not conducted an evidentiary hearing regarding this matter, when the files and records of a case, together with the pleadings, briefs and uncontroverted assertions of the parties show that appointment of a receiver is warranted, an evidentiary hearing is not required. Haase v. Chapman, *supra* at 406. As noted above, the factual assertions of the parties, while not yet proved, are nevertheless sufficiently similar to indicate basic agreement on certain salient points relating to the execution of the security agreements, the nature of the collateral in issue and the repeated transfers and assignments of this collateral. Although the question of whether these transfers were fraudulent in nature is in dispute, these transfers raise a sufficient infer-

ence or "badge" of fraud at this time to warrant the appointment of a receiver to preserve the status quo. In any event, there are other factors in this case which warrant the appointment of a receiver notwithstanding the presence or absence of actionable fraud. These factors include the danger that the collateral will be dissipated or squandered, the inadequacy of available legal remedies, the probability that any hardship to defendants would be outweighed by the potential hardship to plaintiff if appointment were denied, and the potential irreparable harm to the public interest of the citizens of Alabama, as represented by the plaintiff herein. *See* C. Wright & A. Miller, *supra*, at 23–24.

Accordingly, it is hereby ordered that

Edward L. Greenblatt be appointed receiver of the collateral described below, together with the loan ledgers, cards, files and other records of any nature which have previously been compiled and maintained in connection with the collateral, the proceeds, or the collections thereon, including, but not limited to, all of the loan ledgers, cards, files and other records of Atlas Financial Corp. The receiver is hereby authorized to operate and conduct all aspects of the business of Atlas Financial Corp. insofar as such action is required to fully collect and preserve the subject collateral and the proceeds therefrom.

The term "collateral" as used herein shall be defined as and shall include those certain receivables, notes, mortgages, deeds, security interests, or other assets of any kind or nature in which Atlas Financial Corp. and its subsidiaries granted to Modern Home Life Insurance Co. a security interest in conjunction with the issuance of the notes, in the face amount of $5,000,000.00, which are the subject matter of this action. This collateral is described in part upon attachments and exhibits to the respective security agreements executed in conjunction with the aforementioned notes; and also constitutes in whole or in part those assets which have heretofore been as-

signed to First National Mortgage & Discount Co., Inc. by Commonwealth Financial Corp. pursuant to an assignment without recourse dated April 4, 1974.

It is further ordered that after filing of the consent of Edward L. Greenblatt to act as receiver and the posting of a bond in the amount of $50,000.00, the premiums for which shall be paid from the proceeds of the collateral, defendants shall assist the receiver in servicing and maintaining the collateral in accordance with the instructions set forth below. Defendants are hereby ordered to further assist the receiver in locating and collecting the collateral, whether it be in the possession of Atlas Financial Corp., First National Mortgage & Discount Co., Inc., or any other entity subject to the processes of this court. The receiver is hereby ordered to perform the following duties with respect to the collateral:

(a) The receiver shall institute such legal actions, as shall be necessary to collect, hold and preserve the collateral and proceeds therefrom, *see* 28 U.S.C. § 754;  ·

(b) the receiver shall provide for and direct the continued collections upon the collateral, to convert the proceeds into cash and invest same in interest bearing accounts or certificates of deposit issued by a National Bank;

(c) the receiver shall expend such funds as may be reasonably necessary to effect the collections upon the collateral, including paying reasonable salaries, fees and/or commissions to individuals and entities for the maintenance, preservation and collection of the collateral and the proceeds therefrom;

(d) in order to effectuate maintenance, preservation and collection of the collateral, the receiver is hereby authorized to fully utilize the services of defendants, including their employees, agents or other officers and is authorized to expend reasonable sums in compensation for such services, or alternatively, upon approval by the court, the receiver is authorized to expend such reasonable sums

**1344**

as may be required to employ a competent collection agency or other entity for the purpose of servicing and maintaining the collateral;

(e) the receiver shall hold and conserve the collateral, the attending documents and the proceeds from the collateral, with the exception of the foregoing authorized expenditures, for the parties as their interests may be ultimately determined by the court;

(f) the receiver shall file a timely and periodic report showing the nature of the collateral, its value and the disposition of the proceeds therefrom.

It is further ordered that this court retain jurisdiction to make such other and additional orders concerning the collateral and proceeds therefrom as the circumstances may warrant.

It is so ordered.