Sidney **WOLGIN**

v.

**ATLAS UNITED FINANCIAL CORPORATION et al.**

S. Theodore **BLUMENFELD**

v.

**ATLAS UNITED FINANCIAL CORPORATION et al.**

**Civ. A. Nos. 74-221, 74-222.**

United States District Court,
E. D. Pennsylvania.

July 7, 1975.

Melvin Rubin, Haverford, Pa., for plaintiffs.

Edward M. Snyder, Philadelphia, Pa., for defendants.

SUR PLEADINGS AND PROOF

LUONGO, District Judge.

These cases were tried simultaneously before the court without a jury on December 3, 1974. After the conclusion of

oral testimony and following the filing of certain supplemental information, the court noted what appeared to be a jurisdictional defect and brought it to the parties' attention. Rule 12(h)(2), F.R. Civ.P. Thereafter the matter was briefed and argued. Based upon the pleadings and proof, I make the following

### FINDINGS OF FACT

1. Plaintiffs, Sidney Wolgin (in C.A. 74–221) and S. Theodore Blumenfeld (in C.A. 74–222), are individuals who reside in and are citizens of the Commonwealth of Pennsylvania.

2. Defendant Atlas United Financial Corporation (Atlas United) is a Delaware corporation having its principal place of business in Atlanta, Georgia.

3. Defendant Atlas Financial Corporation (AFC) is a Pennsylvania corporation having its principal place of business in Atlanta, Georgia.

4. Defendant James M. Fail is an individual domiciled in the state of Alabama whose last known address was 1700 Daniel Building, Birmingham, Alabama.

5. Prior to December 2, 1971, AFC was a wholly owned subsidiary of Scientific Resources Corporation, a publicly owned company.

6. During the time when AFC was a subsidiary of Scientific Resources Corporation, Wolgin was President and Blumenfeld was Executive Vice President and General Counsel of AFC.

7. On December 2, 1971, Scientific Resources Corporation entered into an agreement to sell the stock of AFC to Fail.

8. To effectuate the transaction, Fail created a new corporation, Atlas United, to acquire the stock of AFC. Atlas United was formed as a wholly owned subsidiary of an Alabama insurance company, Public National Life Insurance Company, controlled by Fail.

9. The documents connected with the sale were signed in Philadelphia on December 2, 1971, at a meeting at which Fail, Atlas United, Scientific Resources Corporation and AFC were all represented by counsel.

10. Contemporaneously with, and as part of the sale transaction, Atlas United entered into separate employment agreements with Wolgin and Blumenfeld. Fail signed the employment agreements as president of Atlas United and AFC.

11. The employment agreements were dated December 2, 1972, and each provided that the employee (Wolgin and Blumenfeld respectively) was to be employed as an executive officer of Atlas United for a period of six years at a compensation of $50,000 a year, payable in equal monthly installments, or as otherwise mutually agreed. (Wolgin opted for bi-monthly payments in the amount of $2,083, and Blumenfeld elected bi-weekly payments of $1,923.08.) Each employee was to provide consultation services with respect to liquidation of the loan portfolios of Atlas United and perform such other duties as determined by the Board of Directors and consented to by each employee, consistent with the position of an executive officer. Each employee was to serve without additional compensation as director or officer of Atlas United or any of its subsidiaries and, if employed by a subsidiary, the subsidiary would be jointly and severally liable with Atlas United for the payments due the employee. The employment agreements also provided that each employee was to devote so much of his time and energy as was reasonably required to perform his duties for Atlas United, no minimum time being specified. The agreements provided that they were to be governed by and construed under the laws of the Commonwealth of Pennsylvania.

12. Fail, personally, and AFC each signed the agreements as surety for all payments required to be made by Atlas United to each of the employees.

13. All of the documents relating to the sale of stock by Scientific Resources Corporation to Fail, and the employment agreements between Atlas United and Wolgin and Blumenfeld, were conditioned upon the repurchase by AFC of $19,600,000 of notes from institutional lenders at a discount price of $14,300,000. Upon the fulfillment of this condition, the sale of stock was to be consummated, and all agreements, including the employment agreements, were to be effective as of the date of signing, December 2, 1971. The condition was satisfied on December 29, 1971, the closing of the transaction was completed on that date, and in accordance with the terms of the agreements, they then became effective as of December 2, 1971.

14. Following the closing of the sale transaction, Wolgin and Blumenfeld performed services for AFC, but performed none for Atlas United.

15. Neither Wolgin nor Blumenfeld has been employed by nor taken an active interest in any other company since December 2, 1971, and each has been available to perform services pursuant to the employment agreements.

16. From December 1971 through October 15, 1973, Atlas United made the payments to Wolgin and Blumenfeld provided for in the employment agreements. Atlas United failed to make the payments due at the end of October 1973.

17. On November 6, 1973, Wolgin and Blumenfeld each gave notice to Fail, in accordance with the suretyship agreements, that Atlas United was in default under their respective employment agreements for non-payment of the salary installments due on October 31, 1973 and demanded payment.

18. Having received no payments subsequent to October 15, 1973, plaintiffs instituted the present actions on January 30, 1974.

19. No payments have been made to Wolgin under his employment agreement since October 15, 1973.

20. Pursuant to arrangements between Blumenfeld and Fail made in April 1974, all arrearages in compensation to Blumenfeld under his employment agreement were paid up to that date and payments were thereafter made to him through but not including the installments due September 20, 1974. No payments have been made to Blumenfeld since September 20, 1974.

21. On September 20, 1974 a receiver was appointed for AFC in an action, now pending in the Northern District of Georgia, entitled *Payne [successor to Bookout] v. Atlas Financial Corp.*, D.C., 395 F.Supp. 1338.

22. On the date of trial, there was due and owing to Wolgin

(a) bi-monthly installments of salary, with interest thereon computed from the due date of each installment, as follows:

| Payment Date | Amount | Interest |
|---|---|---|
| 10/31/73 | $2,083 | $140.60 |
| 11/15/73 | 2,083 | 135.40 |
| 11/30/73 | 2,083 | 130.19 |
| 12/15/73 | 2,083 | 125.00 |
| 12/31/73 | 2,083 | 119.80 |
| 1/15/74 | 2,083 | 114.60 |
| 1/31/74 | 2,083 | 109.40 |
| 2/15/74 | 2,083 | 104.20 |
| 2/28/74 | 2,083 | 99.00 |
| 3/15/74 | 2,083 | 93.80 |
| 3/31/74 | 2,083 | 88.60 |
| 4/15/74 | 2,083 | 83.40 |
| 4/30/74 | 2,083 | 78.20 |
| 5/15/74 | 2,083 | 73.00 |
| 5/31/74 | 2,083 | 67.80 |
| 6/15/74 | 2,083 | 62.60 |
| 6/30/74 | 2,083 | 57.40 |
| 7/15/74 | 2,083 | 52.20 |
| 7/31/74 | 2,083 | 47.00 |
| 8/15/74 | 2,083 | 41.80 |
| 8/31/74 | 2,083 | 36.60 |
| 9/15/74 | 2,083 | 31.40 |
| 9/30/74 | 2,083 | 26.20 |
| 10/15/74 | 2,083 | 21.00 |
| 10/31/74 | 2,083 | 15.80 |
| 11/15/74 | 2,083 | 10.60 |
| 11/30/74 | 2,083 | 5.40 |
| | $56,249 | $1,970.99 = $58,219.99 |

(b) salary for the two days from the last payment date until trial (December 1 and 2, 1974), computed at a daily rate of $138.87, for a total of ............ 277.74

TOTAL .......... $58,497.73

23. On the date of trial, there was due and owing to Blumenfeld

(a) bi-weekly installments of salary, with interest thereon computed from the due date of each installment as follows:

| Payment Date | Amount | Interest | | |
|---|---|---|---|---|
| 9/20/74 | $1,923.08 | $24.04 | | |
| 10/ 4/74 | 1,923.08 | 19.23 | | |
| 10/18/74 | 1,923.08 | 14.42 | | |
| 11/ 1/74 | 1,923.08 | 9.62 | | |
| 11/15/74 | 1,923.08 | 4.81 | | |
| 11/29/74 | 1,923.08 | - - - | | |
| | $11,538.48 | $72.12 | = | $11,610.60 |

(b) salary for the three days from the last payment date until trial (November 30, December 1 and 2, 1974) computed at a daily rate of $138.87, for a total of 416.61

TOTAL .......... $12,027.21

24. At the time of trial, three years remained on each of the employment agreements.

25. Atlas United does not presently intend to assign any duties to Wolgin or to Blumenfeld and does not intend to make any further payments of compensation to either of them under the employment agreements.

26. The parties have stipulated that the present worth of $1.00 per month, payable for 36 months, is $32.871. Wolgin and Blumenfeld are each entitled to damages totalling $136,940.59 for payments due for the balance of the employment agreements ($4,166 per month x $32.871).

27. Fail was given timely notice of the trial date. He did not appear at trial, nor did anyone appear on his behalf.[1]

## DISCUSSION

### A. *Procedural Issues*

Jurisdiction in these cases is based solely upon diversity of citizenship. 28 U.S.C. § 1332 provides in pertinent part:

"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different States;

\* \* \* \* \* \*

(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

 The diversity statute requires complete diversity as to all parties, *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), and "[t]he policy of the statute calls for its strict construction." *Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934). Under § 1332(c), a corporation is deemed a citizen of the state of its incorporation and of its principal place of business. *Wymard v. McCloskey & Co.*, 342 F.2d 495 (3d Cir.), *cert. denied*, 382 U.S. 823, 86 S.Ct. 52, 15 L.Ed.2d 68 (1965), and see *Boysen v. Treadway Inn of Lake Harmony, Inc.*, 53 F.R.D. 96 (E.D.Pa.1971), aff'd, 463 F.2d 247 (3d Cir. 1972). Since plaintiffs are citizens of, and AFC was incorporated in, the Commonwealth of Pennsylvania, AFC is a non-diverse party whose presence destroys this court's jurisdiction.

After the jurisdictional defect was raised by the court, plaintiffs filed motions urging the court either to retain the non-diverse party under the pendent jurisdiction doctrine, or to substitute the Georgia receiver, the alleged real party in interest, for the non-diverse party. If those motions failed, plaintiffs re-

---

1. At the beginning of the trial, I inquired whether anyone was present to represent Mr. Fail. Counsel for Atlas United and AFC stated that Raymond Midgett, Esquire, from the firm of Dechert, Price and Rhoads had been consulted about representing Fail. Mr. Midgett had telephoned my chambers on the day before trial, expressing reservations about appearing on such short notice to defend the action. No explanation was offered as to the reasons for Fail's delay in attempting to obtain counsel in time for the trial. Under the circumstances, the trial proceeded in his absence.

quested, in the alternative, that the court dismiss the non-diverse party in order to preserve its jurisdiction. I will consider the various proposals in the order raised by the plaintiffs.

### 1. Pendent Jurisdiction

■■ The Supreme Court in *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), defined the scope of pendent jurisdiction as follows:

"Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .,' U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole."

*Gibbs* and its progeny have all required a claim based upon a substantial federal question before permitting exercise of this discretionary jurisdiction over non-federal claims of the same parties. Plaintiffs, citing *Borror v. Sharon Steel Company,* 327 F.2d 165 (3d Cir. 1964), *Wilson v. American Chain & Cable Company,* 364 F.2d 558 (3d Cir. 1966), and *Jacobson v. Atlantic City Hospital,* 392 F.2d 149 (3d Cir. 1968), contend, however, that pendent jurisdiction may be exercised in a diversity suit and that it may be exercised, not only over a non-federal claim between the same parties, but over a non-federal claim of a non-diverse (pendent) party.

*Wilson* and *Jacobson* were diversity cases in which the court permitted the exercise of jurisdiction over a party whose claim failed to reach the $10,000 requirement and whose presence did not defeat diversity. In *Borror,* an estate administrator, a West Virginia citizen, instituted Wrongful Death and Survival actions against a Pennsylvania citizen based upon diversity. Plaintiff prevailed on each claim. Defendant appealed, contending that the administrator lacked the capacity to bring a Wrongful Death action and that, since decedent's parents, who could bring the action, were Pennsylvania citizens, diversity was lacking. The Circuit Court affirmed, holding that the administrator, as the real party in interest under Rule 17(a), F.R.Civ.P., could maintain the Wrongful Death action. The same result was reached under Rule 17(b), F.R. Civ.P., which provides that capacity to sue is determined under state law, for under Pennsylvania law, an administrator could maintain a Wrongful Death action. The court also stated that the action could be sustained under a pendent jurisdiction theory since the Wrongful Death and Survival claims were so intertwined as to create a "legal hybrid" and a danger of duplication of damages if not tried together.

■ The pendent jurisdiction analysis in *Borror* may be dictum, but even if considered as an alternative holding, at least one court has construed the holding as limited to the narrow facts of the case. *Olivieri v. Adams,* 280 F.Supp. 428 (E.D.Pa.1968). In any event, a recent Third Circuit decision, *Seyler v. Steuben Motors, Inc.,* 462 F.2d 181 (1972), precludes the exercise of the pendent jurisdiction doctrine in this case.

In *Seyler,* the district court dismissed an action because complete diversity was lacking. Appellants contended that the

district court erred in failing to exercise pendent jurisdiction over the non-diverse party. In a *per curiam* opinion, the court affirmed the dismissal, stating, at 181–182:

> "Appellants' reliance on the doctrines of pendent or ancillary jurisdiction is misplaced. This is not a commingling of a state claim with one based on a federal question. *United Mine Workers of America v. Gibbs* (citation omitted); nor do the claims come within the ambit of *Borror v. Sharon Steel Co.*, 327 F.2d 165 (3d Cir. 1964). *Wilson v. American Chain & Cable Co.*, 364 F.2d 558 (3d Cir. 1966), and *Jacobson v. Atlantic City Hospital*, 392 F.2d 149 (3d Cir. 1968), also relied upon by appellant, dealt with amounts in controversy and not the doctrine of complete diversity."

Chief Judge Lord of this district followed *Seyler* and dismissed a non-diverse party in *Campbell v. Triangle Corporation*, 56 F.R.D. 480 (1972), reversing the position he had taken in an earlier opinion, written before *Seyler*, 336 F.Supp. 1002 (E.D.Pa.1972).

The Fifth Circuit in *Mobil Oil Corporation v. Kelley*, 493 F.2d 784, *cert. denied*, 419 U.S. 1022, 95 S.Ct. 498, 42 L. Ed.2d 296 (1974), recently summarized this area of law and noted that, at 789 fn. 2:

> "[If pendency of parties is extended to instances where federal jurisdiction is based on diversity, the long-held interpretation of the diversity statute as requiring complete diversity of parties would require reconsideration."

Plaintiffs' motion seeking retention of AFC, under the pendent jurisdiction doctrine, will be denied.

### 2. Substitution of "Real Party in Interest"

Plaintiffs also moved to substitute the Georgia appointed Receiver for AFC as the real party in interest. Rule 17(a), F.R.Civ.P. Since the Receiver is a Georgia citizen, his substitution for AFC would presumably create the requisite complete diversity between all parties. This motion must also be denied.

■■ This action was instituted on January 30, 1974. The Receiver was appointed by the District Court in Georgia on September 20, 1974. It is well established that diversity of citizenship is determined as of the date of the commencement of an action. *McNello v. John B. Kelly, Inc.*, 283 F.2d 96 (3d Cir. 1960). That rule has been applied to reject attempts to dismiss actions based on diversity of citizenship where there has been a subsequent change of citizenship by one or more of the parties, see e. g., *Gavin v. Read Corporation*, 356 F.Supp. 483 (E.D.Pa.1973), and it has been said that "[a] corollary of the general rule that diversity is determined as of commencement is that if diversity of citizenship did not exist when the action was commenced, it cannot be created by a later change of domicile by one of the parties or some other event." 13 Wright-Miller ¶ 3608, p. 661 (1975).

In *Anderson v. Watt*, 138 U.S. 694, 11 S.Ct. 449, 34 L.Ed. 1078 (1891), two executors brought a diversity suit seeking to foreclose a mortgage. When it was discovered that complete diversity was lacking, the testamentary letters of the non-diverse executor were revoked and an attempt was made to amend the pleading to dismiss the non-diverse party. The lower court permitted the amendment. The Supreme Court held this was error, stating, at 708, 11 S.Ct. at 453:

> "But the difficulty with this attempt to obviate the fatal defect in jurisdiction was that the record showed that Watt [diverse party] was not the sole surviving executor . . . . when the bill was filed . . . . . It therefore appeared that Watt could not have maintained the bill as amended, on the [date] when the bill as originally framed was filed, and jurisdiction could no more be given to the Circuit Court by the amendment than if a citizen of Florida had sued anoth-

er in that court, and subsequently sought to give it jurisdiction by removing from the state."

Diversity of citizenship was lacking when this suit was commenced and it cannot be conferred retroactively by appointment of a Receiver for the non-diverse party.

### 3. *Dismissal of the Non-Diverse Party*

In the alternative, plaintiffs have moved to dismiss AFC from each action,[2] seeking thereby to preserve this court's jurisdiction. That motion is opposed by defendants.

Defendants contend that AFC, the non-diverse party, is indispensible under Rule 19(b), or even if it is not indispensible, it may not be dismissed *after* trial. If either position is upheld, the trial would be vitiated and these actions must be dismissed. I conclude that AFC is not an indispensible party and that dismissal of a non-diverse party is permissible after trial but before judgment. Accordingly, I will order the dismissal of AFC in order to retain diversity jurisdiction and dispose of the case on the merits as to the remaining defendants.

Rule 19 reads, in pertinent part:

*Joinder of Persons Needed for Just Adjudication*

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties . . . .

(b) *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensible. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

■■■■ The rule was rewritten in 1966. The advisory committee notes listed various defects present in the rule's prior version and stated that the "original Rule 19 directed attention to the technical or abstract character of the rights or obligations of the persons whose joinder was in question, and correspondingly distracted attention from the pragmatic considerations which should be controlling." See *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 116–117 fn 12, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). Defendants have ignored the provisions of the "new" Rule 19 and instead have directed their argument to the "technical" character of the rights involved. They contend that Atlas United and AFC are principals to the em-

---

2. Courts have differed in specifying a procedural vehicle to be used in ordering dismissal or removal of non-diverse parties. See *Horn v. Lockhart*, 84 U.S. 570, 17 Wall. 570, 21 L.Ed. 657 (1873) (dismissal pursuant to "inherent power" of the court); *Taussig v. Wellington Fund, Inc.*, 187 F.Supp. 179 (D. Del.1960), aff'd, 313 F.2d 472 (3d Cir.), cert. denied, 374 U.S. 806, 83 S.Ct. 1693, 10 L.Ed.2d 1031 (1963) (Rule 21); *Graphic*

*Realty & Discount Co. v. Home Fire & Marine Ins. Co.*, 193 F.Supp. 421 (D.Mass. 1961) (Rule 41); *Kerr v. Compagnie de Ultramar*, 250 F.2d 860 (2d Cir. 1958) (Rule 15). Since plaintiffs' motions suggested dismissal pursuant to Rules 15 or 21 or the "inherent power" of the court, it is not necessary to discuss which of the various procedural options should be preferred.

ployment agreements, as such are joint obligors and therefore are indispensible parties. Accepting, for the moment, this analysis and defendants' conclusion that Atlas United and AFC were principals in the Wolgin and Blumenfeld agreements, joint obligors (persons who owe a duty of performance), as opposed to joint obligees (persons to whom a duty is owed), have never been considered indispensible parties. *Camp v. Gress*, 250 U.S. 308, 39 S.Ct. 478, 63 L. Ed. 997 (1919); *Trans Pacific Corporation v. South Seas Enterprises, Ltd.*, 291 F.2d 435 (9th Cir. 1961); *Greenleaf v. Safeway Trails, Inc.*, 140 F.2d 889 (2d Cir.), *cert. denied*, 322 U.S. 736, 64 S.Ct. 1048, 88 L.Ed. 1569 (1944); and see *Smith v. Mandel*, 66 F.R.D. 405 (D.S.C. 1975).

Under the current version of Rule 19, the conclusion as to whether a party should or must be joined is governed by federal law but, in diversity suits, the standard to be applied must be derived from and defined by the status of the parties existing under state law. *Smith v. Mandel*, 66 F.R.D. 405 (D.S.C. 1975); *Jones Knitting Corporation v. A. M. Pullen & Company*, 50 F.R.D. 311, 314 (S.D.N.Y.1970), and see generally *Provident, supra*, at 116–125, 88 S.Ct. 733.

Pennsylvania law governs the interpretation of these agreements. Under Pennsylvania law, "the intention of the parties as evidenced by the language employed in the agreement under consideration," determines the status of the parties. *Mintz v. Tri-County Natural Gas Company*, 259 Pa. 477, 481, 103 A. 285, 286 (1918); see also *Yadusky v. Shugars*, 301 Pa. 99, 151 A. 785 (1930).

Each employment agreement begins as follows: "AGREEMENT made as of 2nd day of December, 1971, by and between ATLAS FINANCIAL CORPORATION, a Pennsylvania corporation (herein called 'AFC'), ATLAS UNITED FINANCIAL CORP., a Delaware corporation (herein called 'Company') and [name of Wolgin or Blumenfeld] (herein called 'Employee')." The next section is entitled *Background of Agreement* and recites: "The Employee is presently employed by AFC. Company is acquiring all of the common stock of AFC and desires to employ Employee who desires to accept such employment, in consideration of the *guarantee by AFC* of the obligations of the Company hereunder." (Emphasis added) Other portions of each agreement specify the duties to be performed, the extent of services required, and the compensation. No further mention of AFC appears in either agreement until paragraph 11 which is entitled *Guaranty by AFC* and recites that: "Employee has been induced to enter into this Employment Agreement in reliance upon the guaranty of AFC herein set forth." The agreement then provides for guarantee by AFC of all money due and performance of all obligations required to be performed by Atlas United. In addition each agreement states: "AFC hereby further agrees that the obligations herein set forth of AFC shall be construed as an absolute, continuing and unlimited suretyship and guaranty of payment without regard to the regularity, validity or enforceability of any liability or obligations of Company hereunder . . . ." It is apparent, therefore, that Atlas United was the principal, or employer, and AFC the surety in these employment contracts.

Rule 19(a) requires joinder of parties when, in their absence, complete relief cannot be afforded those already parties. Since AFC was surety, and since plaintiffs did in fact perform services for AFC, AFC *ought* to be joined, if possible, in the action. But since AFC's presence destroys diversity, the "pragmatic" and "practical" tests of Rule 19(b), see *Schutten v. Shell Oil Company*, 421 F.2d 869 (5th Cir. 1970), must be applied to determine whether AFC is indispensable.

A judgment rendered without AFC would prejudice neither AFC nor the remaining parties. Judgment

against the employer (Atlas United) and a surety (Fail) cannot bind a non-participating surety.[3] Plaintiffs earlier urged retention of AFC in this action since it was the active, operating company capable of paying a judgment against it. *Defendants* now attempt to use plaintiffs' argument against plaintiffs, contending that, since no "adequate" (meaning collectible) judgment can be rendered without AFC, AFC is, therefore, indispensible. That contention is in error. An adequate judgment can be rendered against Atlas United and Fail without the presence of AFC. Whether that judgment can then be collected by the plaintiffs goes to the efficacy, not the adequacy, of the relief granted.

■ Defendants further contend that if the action is dismissed plaintiffs will have an adequate remedy against all defendants in a different forum. The trial in this case has concluded and as the Supreme Court stated in *Provident, supra,* at 112, 88 S.Ct. at 739: "After trial, however, the 'adequacy' of this hypothetical alternative, from the plaintiffs' point of view [has] obviously greatly diminished." While in *Provident,* judgment had already been entered, the considerations of time, expense and judicial efficiency highlighted there also apply to some degree after trial but before judgment. As a practical matter, if this suit were to be dismissed, plaintiffs would in all probability file a new suit in this same district against Atlas United and Fail, the diverse parties. Based upon considerations of judicial efficiency, the lack of prejudice to the parties and the adequacy of judgment that can be rendered without AFC, "in equity and good conscience" I conclude that AFC is not indispensible.

■ Defendants urge that even if AFC is not indispensible, dismissal of a non-diverse party should not be permit-

ted after trial. While lateness in the litigation process counseled *for* a finding of non-indispensibility, defendants argue that this same lateness counsels *against* permitting party dismissal. The grant or denial of permission to dismiss a non-diverse party, under any of the procedural vehicles cited in plaintiffs' motion, see footnote 2, *supra,* is within the discretion of the court. Courts have permitted dismissal of non-diverse parties to achieve diversity after trial but before judgment, *County of Wyoming, N. Y. v. Erie Lackawanna Ry. Co.,* 360 F.Supp. 1212 (W.D.N.Y.1973) and see *Jett v. Phillips & Associates,* 307 F. Supp. 432 (D.Colo.1969), *aff'd,* 439 F.2d 987 (10th Cir. 1971), and even upon remand after a circuit court reversal. *Finn v. American Fire & Casualty Co.,* 207 F.2d 113 (5th Cir. 1953), *cert. denied,* 347 U.S. 912, 74 S.Ct. 476, 98 L. Ed. 1069 (1954).

■ Since I have concluded that AFC is not indispensible and that its absence from the action will not prejudice any other party under Rule 19, I will exercise my discretion to grant the motion to dismiss AFC, the non-diverse party.

B. *Substantive Issues*

Having disposed of the procedural issues, I will now discuss the merits of each case.

It was admitted in the Blumenfeld case that the employment and surety agreements were executed on December 2, 1971 by Fail acting as president of the newly formed Atlas United Corporation. I am satisfied by a preponderance of the evidence, indeed by the only evidence presented, that the Wolgin employment and surety agreements were also executed on December 2, 1971 by Fail at the same time as all other documents connected with the sale of AFC. The employment agreements were conditioned upon the making of satisfactory arrangements to reduce a portion of out-

3. Even under the earlier version of Rule 19, sureties were never considered indispensible parties. See, e. g., *R. P. Farnsworth & Company, Inc. v. Globe Marble & Granite Corp.,* 250 F.2d 636 (5th Cir. 1958), *New Amsterdam Cas. Co. v. Town of Weymouth,* 97 F.Supp. 565 (D.Mass.1951).

**1014**

standing AFC indebtedness. That condition was satisfied and when it was, the agreements became effective as of December 2, 1971.

The employment agreements speak clearly. Plaintiffs were entitled to be compensated so long as each stood ready to perform "consultation services with respect to the liquidation of the present portfolio of loans of Company and such other duties and powers as may be determined by the Board of Directors of the Company with the consent of Employee." Apparently plaintiffs were called upon to do very little, if any, work under these agreements and whatever work they performed was for AFC, not Atlas United.

■ Pointing to the language of the agreements, defendants contend that they lack consideration and thus, are unenforceable. This is not a proper characterization of the situation. The only failure in these cases is on the part of Atlas United to avail itself of the services it could call upon Wolgin and Blumenfeld to perform under the employment agreements. There is ample consideration in plaintiffs' commitments to perform services of an executive nature when called upon by Atlas United or its subsidiaries.

Fail did not appear and therefore presented no defense in these cases, but I suspect that any defense he might have offered could rise no higher than that attempted by Atlas United. I think that even if he had appeared and contested these actions, Fail could not refute the evidence that the agreements were executed on December 2, 1971, or overcome the common sense meaning of the agreements. I am satisfied that Fail executed the employment agreements for Atlas United and, in addition, personally agreed to act as surety for each of these agreements.

Wolgin and Blumenfeld, therefore, are entitled to recover as damages the compensation due and owing to them, plus accrued interest, at the time of trial. This leaves only the question of whether plaintiffs presently are entitled to recover as damages the compensation due for the remainder of each employment term.

■ An anticipatory breach of a contract occurs whenever there has been a definite and unconditional repudiation of a contract by one party communicated to another. A statement by a party that he will not or cannot perform in accordance with agreement creates such a breach. See 4 *Corbin on Contracts* ¶ 959, p. 852–856 (1951). The stoppage of payments by Atlas United and its communication to plaintiffs that no further compensation would be forthcoming was an anticipatory breach.

Under Pennsylvania law, in an action for anticipatory breach of an employment contract, a plaintiff is entitled to recover the stipulated salary for the balance of the employment term. *McAleer v. McNally Pittsburgh Manufacturing Company*, 329 F.2d 273, 275 (1964). See also, *King v. Steiren*, 44 Pa. 99, 105 (1862); *Emery v. Steckel*, 126 Pa. 171, 175–6, 17 A. 601 (1889); *Gordon v. Tomei*, 144 Pa.Super. 449, 19 A.2d 588 (1941); *Savitz v. Gallaccio*, 179 Pa.Super. 589, 595, 118 A.2d 282 (1955); *Williams v. Masters, Mates & Pilots of America, Local No. 2*, 384 Pa. 413, 422, 120 A.2d 896 (1956); 5 *Williston on Contracts*, ¶ 1360 (Rev.Ed.1939), all cited in *McNally*.

Defendants contend that since the lawsuit was brought before expiration of plaintiffs' terms of employment, they may recover only payments due at the time of trial. A plaintiff is entitled to recover payments due for the balance of the employment term regardless of whether suit was instituted before or after expiration of the term. *Hocking v. Hamilton*, 158 Pa. 107, 27 A. 836 (1893); *Wilke v. Harrison Bros. & Co.*, 166 Pa. 202, 30 A. 1125 (1895); see *Roehm v. Horst*, 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953 (1900), and the leading English case *Hochster v. De la Tour*, 2 El. & Bl. 678 (1853). As stated in *Russell v. Barnes Foundation*, 52 F.

Supp. 827, 830 (E.D.Pa.1943), *aff'd*, 143 F.2d 871 (3d Cir. 1944), *cert. denied*, 323 U.S. 771, 65 S.Ct. 122, 89 L.Ed. 616 (1945), a Pennsylvania diversity case dealing with a breach of a five year employment contract: *"Damages resulting from an anticipatory breach of a contract of employment by an employer are not limited to the loss sustained by the employee up to the time of trial only, but may be granted for the entire term of the contract."* (Emphasis added)

Wolgin and Blumenfeld are entitled to the award of the present worth of the future payments due under the employment agreements, as an additional element of damages.

## CONCLUSIONS OF LAW

1. This court has jurisdiction, pursuant to 28 U.S.C. § 1332, over the controversy between plaintiffs, Sidney Wolgin and S. Theodore Blumenfeld, and defendants, Atlas United Financial Corporation and James M. Fail.

2. Diversity of citizenship is lacking between plaintiffs, Sidney Wolgin and S. Theodore Blumenfeld, and defendant, Atlas Financial Corporation, and this court accordingly lacks jurisdiction, pursuant to 28 U.S.C. § 1332, over the controversy between them.

3. Atlas Financial Corporation is not an indispensible party and may be dismissed from these actions to maintain this court's diversity jurisdiction over the remaining parties.

4. Atlas United Financial Corporation breached the employment agreement with Sidney Wolgin, entered into December 2, 1971, by failing to make payments due on and after October 31, 1973.

5. Atlas United Financial Corporation breached the employment agreement with S. Theodore Blumenfeld, entered into December 2, 1971, by failing to make payments due on and after September 20, 1974.

6. James M. Fail has breached the surety agreement with Sidney Wolgin, entered into December 2, 1971, by failing, upon receipt of notice, to make payments due on and after October 31, 1973.

7. James M. Fail has breached the surety agreement with S. Theodore Blumenfeld, entered into December 2, 1971, by failing, upon receipt of notice, to make payments due on and after September 20, 1974.

8. Sideny Wolgin is entitled to an award of damages against Atlas United Financial Corporation and James M. Fail in the total amount of $195,438.32, consisting of $58,497.73, representing salary due and interest thereon until the date of trial, and $136,940.59, representing the present worth of future payments remaining to be paid for the balance of the employment agreement.

9. S. Theodore Blumenfeld is entitled to an award of damages against Atlas United Financial Corporation and James M. Fail in the total amount of $148,967.-80, consisting of $12,027.21, representing salary due and interest thereon until the date of trial, and $136,940.59, representing the present worth of future payments remaining to be paid for the balance of the employment agreement.