392 F.2d 149
 Irwin JACOBSON, Executor of the Estate of Jack Jacobson,
Deceased, Appellant,
v.
ATLANTIC CITY HOSPITAL, a Corporation of the State of New
Jersey, Harry P. Goodman and Lawrence Strenger.
 No. 16522.
 United States Court of Appeals Third Circuit.
 Argued Oct. 16, 1967.
Decided April 1, 1968.
 
 Richard J. Schachter, Halpern, Schacter and Wohl, Somerville, N.J., for appellant.
 Burchard V. Martin, Taylor, Bischoff, Neutze & Williams, Camden, N.J., for appellee.
 Before HASTIE, FREEDMAN and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 HASTIE, Chief Judge.
 
 
 1
 This is an appeal, perfected under Rule 54(b), from a judgment by a district court in a diversity action dismissing a complaint against the defendant Atlantic City Hospital for lack of jurisdiction. D.N.J.1966, 259 F.Supp. 836.
 
 
 2
 Plaintiff, executor of the estate of Jack Jacobson, instituted this negligence action in the district court under both the New Jersey Death Act and the New Jersey Survival Act for the recovery of damages from the hospital, a non-profit eleemosynary corporation, and two physicians who attended Jacobson during his hospitalization. The court's jurisdiction was based solely on the diversity statute which requires that the matter in controversy exceed $10,000. The district court dismissed the complaint against the hospital on the ground that, although more than $10,000 in damages was claimed, the maximum recovery allowable against the hospital under New Jersey statutory law is $10,000. The controlling New Jersey statute reads, in pertinent part, as follows:
 
 
 3
 'N.J.S.A. 2A:53A-7: Non-profit corporations and associations organized for religious, charitable, educational or hospital purposes; liability for negligence
 
 
 4
 'No nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever dagree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association; but nothing herein contained shall be deemed to exempt the said agent or servant individually from their liability for any such negligence. L.1959, c. 90, p. 221, 1.'
 
 
 5
 'N.J.S.A. 2A:53A-8: Liability to beneficiary suffering damages not exceeding $10,000
 
 
 6
 'Notwithstanding the provisions of the foregoing paragraph, any nonprofit corporation, society or association organized exclusively for hospital purposes shall be liable to respond in damages to such beneficiary who shall suffer damage from the negligence of such corporation, society or association or of its agents or servants to an amount not exceeding $10,000.00, together with interest and costs of suit, as the result of any 1 accident and to the extent to which such damage, together with interest and costs of suit, shall exceed the sum of $10,000 such nonprofit corporation, society or association organized exclusively for hospital purposes shall not be liable therefor. L.1959, c. 90, p. 222, 2.'
 
 
 7
 Plaintiff concedes that the $10,000 statutory limit applies to the pain and suffering claim asserted by him under the Survival Act because he is in effect asserting the claim on behalf of the deceased and the deceased was a 'beneficiary' of the hospital within the meaning of that term in the statute. However, he contends, that the $10,000 limitation does not apply to the wrongful death cause of action. Moreover, even if it does, he argues that it is a completely separate limitation, so that this claim may be added to the claim for pain and suffering to meet the jurisdictional requirement.
 
 
 8
 We think the district court was correct in concluding that, regardless of the fact that claims for wrongful death the pain and suffering were alleged, the maximum amount recoverable was $10,000 'as the result of any 1 accident.' Plaintiff argues that the use of the singular 'beneficiary' or 'person' indicates that the $10,000 limitation is to apply to each such beneficiary. We think not. If plaintiff's argument was accepted it would mean that by the words 'beneficiary, to whatever degree,' the legislature intended that the amount the executor could recover for wrongful death might depend on the number of dependent next of kin. However, the statutory focus is on the maximum amount recoverable on the basis of a single accident to a single person. See Trail v. Green, D.N.J.1962, 206 F.Supp. 896.
 
 
 9
 Plaintiff next argues that under the Death Act the dependents of the deceased are not beneficiaries of the hospital within the meaning of that term as employed in N.J.S.A. 2A:53A-7 and 8. However, a cause of action under the Death Act comes into being because of the legal relationship between the deceased and the beneficiaries of the executor's action. The beneficiaries' dependence upon the deceased and their pecuniary loss due to his demise trigger the right to sue under the Death Act. See Turon v. J. & L. Construction Co., 1952, 8 N.J. 543, 86 A.2d 192. A beneficiary of the benevolence of a nonprofit charitable hospital has been defined as one who is "the recipient of another's bounty; one who received a benefit or advantage." Kolb v. Monmouth Memorial Hospital, E. & A., 1936, 116 N.J.L. 118, 120, 182 A. 822, 823. Dependents of a patient in a nonprofit hospital who would be beneficiaries of a damage action from the negligent death of such patient, come within the statutory language 'beneficiary, to whatever degree,' in relation to the benevolence and charitable goodness of a nonprofit hospital. N.J.S.A. 2A:53A-7 and 2A:53A-8. To hold otherwise would require us to infer that the New Jersey Legislature intended to limit the recovery of a patient who was injured by the negligence of a nonprofit charitable hospital but would impose no such limitation upon recovery by each of his next of kin if he died as the result of such negligence. We think such a result is not compatible with the legislative objection.
 
 
 10
 An examination of the history of the case law in New Jersey as it has evolved over the years supports our conclusion that a patient's next of kin are, within the statute, beneficiaries of a nonprofit hospital. Many years ago the State of New Jersey created by judicial decision the rule of charitable immunity in favor of hospitals when sued by patients for negligence. The immunity rule was later extended to non-patients who were beneficiaries of a nonprofit hospital's benevolence. As the court said in Boeckel v. Orange Memorial Hospital, Sup.Ct.1932, 108 N.J.L. 453, 456, 158 A. 832, 833, aff'd E. & A.1933, 110 N.J.L. 509, 166 A. 146:
 
 
 11
 'In a very real sense the charitable impulses which served the patient served also the patient's mother, indeed served all those who, by whatever bond of attachment, suffered through the infirmity of the patient or were eased by the lightening of her pain.'
 
 
 12
 Against this case law background the Supreme Court of New Jersey, in 1958, overruled the charitable immunity doctrine. See Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29, 141 A.2d 276. A statute was promptly passed in New Jersey which was intended to restore for one year the charitable immunity doctrine as it existed before the Collopy case, except for the $10,000 maximum liability provision as to nonprofit hospitals. This was done to give such hospitals time to obtain insurance coverage. Anasiewicz v. Sacred Heart Church, App.Div.1962, 74 N.J.Super. 532, 181 A.2d 787, certification denied, 1962, 38 N.J. 305, 184 A.2d 419. Within a year thereafter New Jersey in effect readopted the provisions of the earlier statute without a limitation of time. LaParre v. YMCA, 1959, 30 N.J. 225, 152 A.2d 340. That statute provided that 'This Act shall be deemed to be remedial and shall be liberally construed so as to afford immunity to the said corporations * * *,' which included those entities operating nonprofit hospitals.
 
 
 13
 We think the legislative and case law background support the conclusion that a Death Act claim is within the 'beneficiary' provision of the statute. The district court, therefore, properly construed and applied the statute.
 
 
 14
 But the conclusion that no liability in excess of $10,000 can be imposed on the hospital does not solve the jurisdictional problem. For in this lawsuit the decedent's executor is demanding damages from two physicians as well as the hospital for the same fatal accident and there is no $10,000 limitation on the physicians' liability. Indeed, on the present record it must be conceded that potentially the jurisdictional amount is recoverable and diversity jurisdiction exists as to the claims against the doctors. So it becomes necessary to inquire whether this is enought to give the court jurisdiction over the entire lawsuit, including the claim of not more than $10,000 against the hospital.
 
 
 15
 The jurisdictional requirement of Section 1332 is stated in terms of 'the amount in controversy' in an 'action.' Preliminarily, it should be considered in interpreting this language that the Constitutional judicial power of the United States under Section 2 of Article III extends to all 'Controversies * * * between Citizens of different States,' without regard to the amount involved. However, Congress, concerned that the district courts not be unduly burdened with a very large number of small disputes between citizens of different states and that citizens not be forced to defend minor claims far from home, has seen fit to provide that diversity jurisdiction shall be exercised only if the 'action' is one in which an amount in excess of $10,000 is in controversy. Thus, we are concerned here only with a matter of statutory interpretation. And we need not construe 'action' more narrowly than seems reasonable and appropriate to carry out the legislative purposes of relieving the district courts of a large amount of relatively small litigation and avoiding the imposition of undue hardship upon citizens of other than the forum state.
 
 
 16
 In legal comtemplation, the claims asserted against the hospital and at least one of the physicians in this lawsuit are so interrelated that they can rationally be viewed as constituting a single 'action' rather than several. In its opinion the court below properly pointed out that the 'plaintiff urges with considerable persuasion that the concurrent negligence of all three defendants was logically integrated in proximately producing the ultimate tortious result,' the death of the patient after falling from his hospital bed. In answers to interrogatories the plaintiff specified that both the hospital and one doctor were negligent in failing to supervise the patient in a way that would have prevented him from falling from his bed.[1] In addition, all of the alleged wrongs occurred while the decedent was a hospitalized patient, and it is logically to be inferred that the physician who is charged with negligent supervision was at least a member of the defendant hospital's visiting staff. Thus, the concept of a single 'action' for diversity purposes seems rationally applicable to the claims against the hospital and the physician, both of whom are charged with inadequate supervision of the patient.
 
 
 17
 In recent years this court has taken the lead in recognizing diversity jurisdiction over an entire lawsuit in tort cases presenting closely related claims based, in principal part at least, on the same operative facts and normally litigated together, even though one of the claims, if litigated alone, would not satisfy a requirement of diversity jurisdiction.
 
 
 18
 In Borror v. Sharon Steel Co., 3d Cir., 1964, 327 F.2d 165, we considered a negligence case in which redress had been sought by the normal procedure of coupling a wrongful death claim and a survival claim. It was admitted that the survival claim satisfied the requirements of diversity jurisdiction. But it was argued that diversity of citizenship did not exist between the defendant and the parties in interest in the wrongful death claim. However, we held that diversity jurisdiction could and should be exercised over the entire lawsuit. We found the application of a comprehensive single action concept for jurisdictional purposes to be fair and time saving, as well as notably realistic when applied by a federal court in a diversity case in a state which had a strong policy in favor of coupling such claims in a single lawsuit.
 
 
 19
 Wilson v. American Chain & Cable Co., 3d Cir., 1966, 364 F.2d 558 is even closer to the present case. There we held that a father's claim for less than $10,000 for medical expenses for his injured son, joined with the son's claim for personal injuries exceeding $10,000, constituted an action for an amount in excess of $10,000 within the jurisdictional requirement of Section 1332. We emphasized the considerations of 'judicial economy, and the convenience and fairness to litigants' which impelled a view of this litigation as a single action within diversity jurisdiction.[2] We also pointed out that 'both claims ordinarily would be tried in one judicial proceeding,' 364 F.2d at 564, in state[3] or federal practice.
 
 
 20
 Moreover, district courts in this circuit have been alert to follow our lead in developing and applying this concept. Newman v. Freeman, E.D.Pa.1966, 262 F.Supp. 106; Morris v. Gimbel Bros., Inc., E.D.Pa.1965, 246 F.Supp. 984.
 
 
 21
 It is true that the cited cases in this circuit differ in some details. In one, the coupled claims are asserted by or on behalf of different parties in interest. In another, the parties to both claims are identical. In the present case, claims are asserted against different defendants, though the hospital and one physician are charged with the same neglect of duty. In each case, however, the coupled claims arise out of a single injury sustained by a particular person. And in the present case, the defendant hospital and at least one of the defendant physicians it had authorized to attend a patient it had accepted, were closely associated in the venture which caused the harm in suit. Moreover, most of the operative facts are common to the coupled claims, and in normal and most convenient and expeditious practice and procedure these claims would be tried together in a single lawsuit.[4] In such circumstances, it seems reasonable and proper to view the lawsuit as a single 'action' within diversity jurisdiction without requiring that each claim exhibits all of the jurisdictional requirements.
 
 
 22
 It should be added that in the present case no apparent disadvantage would be imposed upon the hospital, located in Atlantic City, by having the claim against it tried in a New Jersey federal court together with the claims against the doctors. Indeed, such procedure may well aid in the equitable determination and allocation of responsibility, if any, for the fatal mishap.[5] At the same time, the evidence relevant to the claim against the hospital but not relevant to the claims against the physicians is not likely to be of such kind or extent as to confuse the litigation or add substantially to the trial court's burden.
 
 
 23
 Our holding that all of the above mentioned considerations combine in this case to make it appropriate that this entire lawsuit should be treated as one 'action' satisfying the requirements of diversity jurisdiction, does not mean that the same result must be reached in other cases where different circumstances make a contrary conclusion fair and reasonable. The involvement and interrelation of various considerations as determinants whether a lawsuit should be treated as one 'action' or several for diversity purposes makes the test a flexible one in which the courts will be required to exercise their best judgment in the light of many interacting factors.[6]
 
 
 24
 Finally, this view of the scope of diversity jurisdiction where related claims are joined in a single lawsuit, finds significant analogical support in United Mine Workers of America v. Gibbs, 1966, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218, although federal question jurisdiction was involved there. That case liberalized the concept of so-called pendent jurisdiction 'where two distinct grounds in support of a single cause of action are alleged, only one of which presents a federal question.' See Hurn v. Oursler, 1933, 289 U.S. 238, 246, 53 S.Ct. 586, 589, 77 L.Ed. 1148. The Court criticized the 'unnecessarily grudging' approach of the lower courts toward the recognition that 'the relationship between * * * (the federal claim) and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case." 383 U.S. at 725, 86 S.Ct. at 1138. The Court then urged hospitality toward requested adjudication of both federal and state claims that 'derive from a common nucleus of operative fact,' particularly where 'considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding. * * *' Id.
 
 
 25
 These considerations seem as applicable to cases in which federal jurisdiction is based upon diversity of citizenship as to federal question cases. We have given them effect in past diversity cases and we do so here.
 
 
 26
 For these reasons, the judgment of the district court will be reversed and the cause remanded for trial of the related claims with the right of recovery against the hospital limited as required by this opinion.
 
 
 
 [1]
 In addition, the doctors were charged with negligence in diagnosis and treatment
 
 
 [2]
 Cf. Raybould v. Mancini-Fatore Co., E.D.Mich., 1960, 186 F.Supp. 235. Oikarinen v. Alexian Bros., 3d Cir., 1965, 342 F.2d 155, is distinguishable because there the claim which exceeded the jurisdictional amount and the insufficient claim were brought in separate suits which the district court refused to consolidate after it appeared that one suit did not involve the jurisdictional amount
 
 
 [3]
 Pennsylvania law requires that such claims as the Wilson case presented be tried in a single suit. The joinder in the present New Jersey suit is normal and customary but apparently not mandatory under state law
 
 
 [4]
 As the Supreme Court state in a footnote in United Mine Workers of America v. Gibbs, 1966, 383 U.S. 715, 725 n. 13, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 'While it is commonplace that the Federal Rules of Civil Procedure do not expand the jurisdiction of federal courts, they do embody 'the whole tendency of our decisions * * * to require a plaintiff to try his * * * whole case at one time,' Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 320, 47 S.Ct. 600, 71 L.Ed. 1069.' See also Rule 20(a), Federal Rules of Civil Rpocedure
 
 
 [5]
 New Jersey law provides for contribution among joint tort-feasors. N.J.S. 2A:53A, N.J.S.A
 
 
 [6]
 In some cases the claim which lacks an independent basis of federal jurisdiction may present difficult state law questions which can better be decided by state courts. In others, the number or dominance of the would be pendent claims or the burden their litigation in the federal forum would impose upon far away parties and litigants and upon the court itself may indicate that jurisdiction should not be accepted. In this connection the extent and nature of the separate proof required by the pendent claim or claims will be relevant. Fairness to additional defendants who are not significantly related to parties involved in the primary claim must be considered. On occasion, it may be arguable that lack of diversity of citizenship is more persuasive against accepting pendent jurisdiction than lack of jurisdictional amount would be. This listing of potentially relevant factors does not purport to be exhaustive. It does indicate the nature of the problem and the impossibility of satisfactory solution by any simple rule of thumb