## Herbert E. WITTERSHEIM
### v.
## GENERAL TRANSPORTATION SERV-
### ICES, INC., et al.
#### Civ. A. No. 74–0139–R.

United States District Court,
E. D. Virginia,
Richmond Division.

July 1, 1974.

John F. Kelly, Hirschler & Fleischer, Richmond, Va., for plaintiff.

James C. Roberts and Collins Denny, III, Mays, Valentine, Davenport & Moore, Richmond, Va., for defendants.

### MEMORANDUM

WARRINER, District Judge.

This complaint is before the Court on a motion to dismiss on the grounds that the Court lacks jurisdiction because the controversy is not wholly between citizens of different states in that the defendant, Diesel Injection Sales and Service, Inc., is a citizen of the Commonwealth of Virginia, the State of which plaintiff is also a citizen. The defendant, General Transportation Services, Inc., is a citizen of the State of Tennessee.

The question raised by the motion to dismiss is whether this Court has the power to exercise pendent jurisdiction over the claim against the resident corporation and, if so, whether the Court should exercise its discretion to accept such pendent jurisdiction. No pleadings other than the motion to dismiss having been filed, the Court must view the case upon the facts as set forth in the complaint.

In essence the complaint alleges that the defendant, General Transportation Services, Inc. (GTS) had contracted with the plaintiff to purchase all the outstanding stock of Disa, Inc., a Virginia corporation. Disa, Inc., was the sole stockholder of the defendant Diesel Injection Sales and Service, Inc., also a Virginia corporation (the Company). The contract was set forth in certain stock acquisition instruments filed with the complaint. GTS made certain additional agreements with plaintiff regarding bonuses which plaintiff might receive in return for accrued profits on the outstanding capital stock of Disa, Inc., existing at the time GTS acquired the stock. These profits were generated prior to the acquisition of said stock by GTS, but were not payable until sometime after the transfer. Further, in accordance with the stock acquisition agreements, GTS was required to enter into an agreement whereby plaintiff was to be employed by the Company as a consultant. This employment agreement was made a part of the stock acquisition contract. All of the agreements which form the basis of the various causes of action alleged by plaintiff arose out of the stock acquisition agreements between the plaintiff and GTS.

Plaintiff alleged seven causes of action in the complaint, five of which were against GTS alone and two of which were against GTS and the Company. A summary of the seven counts is as follows:

| Count | Claim | Defendant(s) |
|---|---|---|
| I | Breach of bonus compensation agreement | GTS |
| II | Breach of employment contract | GTS and Company |
| III | Unreimbursed expenses | GTS |
| IV | Damages to plaintiff's reputation, credit, etc. | GTS |
| V | Consulting agreement | GTS |
| VI | Failure to pay accrued pension costs | GTS and Company |
| VII | Loss of fringe benefits | GTS |

GTS having purchased all the outstanding stock of Disa, Inc., the Company was a wholly owned subsidiary of GTS during the period encompassed by the complaint. Nevertheless, Counts II and VI obviously fail to meet the requisite diversity requirement.

With respect to Count II, although the Company is the actual party to the employment agreement, this agreement was ancillary to the stock acquisition agreements and was executed by the Company in discharge of the obligation of GTS to employ plaintiff. The actual directive which advised plaintiff that he was no longer to be employed by the Company was sent to plaintiff by GTS, not by the Company. Upon terminating plaintiff's employment contract with the Company, GTS assigned him to new duties with another affiliate of GTS. Later, GTS formally terminated plaintiff's employment agreement with the Company and, at the same time, terminated the consulting agreement between the plaintiff directly with GTS.

With respect to Count VI, the Company had adopted a pension plan prior to its acquisition by GTS. Under the stock acquisition agreements, GTS was required to cause the Company to pay certain monies into the pension funds. GTS failed to require the Company to make such payments and the Company failed so to do.

The plaintiff specifically alleges that, "All claims involved herein derive from a common nucleus of operative fact and are such that plaintiff would ordinarily be expected to try them all in one judicial proceeding . . . ."

The landmark case in the more recent view of pendent jurisdiction is United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The pendent jurisdiction in *Gibbs* rests upon a federal question, not diversity as in the instant case. Further, pendent jurisdiction in *Gibbs* rested upon a pendent claim against the same defendant rather than a pendent claim against a co-defendant, as in the instant case. Accordingly, the first question to be decided is whether the doctrine of pendent jurisdiction applies in diversity cases with the same force and effect as in federal question cases.

Subsequent to the decision in *Gibbs*, the Fourth Circuit has addressed itself

specifically to this question. Stone v. Stone, 405 F.2d 94 (1968). Citing with approval the Third Circuit case of Jacobson v. Atlantic City Hospital, 392 F. 2d 149 (1968), Chief Judge Sobeloff concluded as follows:

> Thus, in multi-claim *diversity* cases, the Third Circuit treads the path recently blazed by the Supreme Court in United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed. 218, where guidelines were announced for the proper handling of state claims in *federal question* cases. In the latter type of case, the question is to what extent under the *doctrine* of pendent jurisdiction, a federal court may adjudicate a claim grounded in state law when jurisdiction is based on the presence of a federal question. We recognize, of course, that the question before us—whether a federal court may exercise jurisdiction in a diversity case over a claim which in itself does not exceed $10,000—is not precisely the same as a question raised under the pendent jurisdiction doctrine—whether a federal court may take jurisdiction in a federal question case over a claim based on state, not federal law. An apt analogy between the two is, however, at once apparent. In each situation, the Federal court has before it a claim which clearly satisfies the requirement of § 1331 or § 1332, and in each instance, the plaintiff asserts an additional claim which, if litigated alone, would not satisfy a jurisdictional requirement.
>
> Otherwise stated, the question in both the federal question area and the diversity area is whether a federal court may exercise jurisdiction over a claim which, standing alone, would not meet the jurisdictional tests.
>
> We find the force of the analogy most compelling and therefore adopt the approach enunciated by the Supreme Court in *Gibbs*. [Emphasis in original]

*Stone* was recently cited by the Supreme Court in Moor v. County of Ala-

meda, 411 U.S. 693, 713 n. 29, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), though the question of the applicability of pendent jurisdiction to diversity cases was not necessary to the decision in *Moor*.

■ In view of the holding in *Stone* and *Jacobson*, and the implications in *Moor*, however, this Court concludes that the doctrine of pendent jurisdiction is applicable to diversity cases. Indeed, the Court can perceive of no reason why federal question cases should be placed in any different status in the determination of pendent jurisdiction than diversity cases.

■ Next, we must consider the question as to whether pendent jurisdiction extends to pendent parties to the same extent as it does to pendent claims. While the doctrine of pendent jurisdiction may not extend to pendent parties to the same extent or in the same manner as it extends to pendent claims, yet we conclude that the doctrine of pendent jurisdiction does include pendent parties.

While the Supreme Court has not yet approached the matter definitively, it was discussed rather extensively in Moor v. County of Alameda, 411 U.S. at 713–715, 93 S.Ct. 1785. The Court there pointed out the similarity between accepting jurisdiction over a pendent party and jurisdiction under Fed.R.Civ.P. 13(a), 13(h) and 14(a). The Third Circuit, a leader in following the *Gibbs* rationale, considered the question in Borror v. Sharon Steel Company, 327 F.2d 165 (3d Cir. 1964) where a wrongful death claim was coupled with a survival claim. While the survival claim satisfied the requirements of diversity jurisdiction, it was argued that diversity of citizenship did not exist with respect to the defendants in the wrongful death claim. The Third Circuit held that diversity jurisdiction could and should be exercised over the entire law suit.

■ Having determined hereinabove that pendent jurisdiction may derive from diversity as well as federal question cases and may exist where there is a pendent defendant as well as a pendent claim, the question arises as to whether

this is a diversity case in which such power exists. As set forth in *Gibbs*, the following additional factors should be present before the Court may properly exercise its power of pendent jurisdiction: (1) the relationship between the primary claim and the pendent claim must permit the conclusion that the entire action comprises but one claim; (2) the primary claim must be one of substance; (3) the primary claim and the pendent claim must arise out of a common nucleus of operative facts; (4) the primary claim and the pendent claim must be such as would ordinarily be tried in one judicial proceeding.

▆ Reviewing these criteria in order, the Court concludes that (1) the relationship between the claim under the diversity statute and the pendent claim, taking the complaint on its face value, is so intermingled that it cannot be disputed that the entire action comprises but one claim. The claim under the diversity statute (2) is alleged to be of substantial magnitude and is of real substance. Since all the matters in controversy arose out of the stock acquisition agreements, each involved GTS or its wholly owned subsidiary, and all operative control was vested in GTS, it is clear that both claims (3) arise from a common nucleus of operative facts. Had the proceeding been brought in a state court which had jurisdiction over both defendants or had the proceeding been brought in a federal court which had diversity jurisdiction over both defendants, assuredly (4) all claims would have been tried in one judicial proceeding.

Having determined that pendent jurisdiction exists in the general class of cases, of which the instant case is one, and that the factors present in the instant case confer upon the Court the power to exercise pendent jurisdiction, there still remains the question of whether, in the discretion of the Court, such power should be exercised in the instant case.

The guidelines in *Gibbs* direct the trial courts to consider (a) economy, (b) fairness, (c) convenience, and (d) the existence of unified legal theories of re-

lief. It is self evident to the Court that trial of the claims against GTS and against the Company may be effected more economically in one trial in one court rather than in two different trials in two different courts. The Court perceives nothing unfair about requiring both defendants to present their defense at a common trial since the Company is a wholly owned subsidiary of GTS and its interests and those of GTS are perforce identical. Counsel for both parties admit to the greater convenience which would result from one trial of all the claims. Indeed, both defendants are represented by the same lawyer. A careful reading of the complaint indicates that the claims against GTS, as well as the claims against the Company sound in contract and are both the outgrowth of alleged breaches of the underlying stock acquisition agreements. Thus, unified legal theories of relief exist.

In *Gibbs*, the Court also pointed out certain matters which might render the exercise of discretion to accept pendent jurisdiction inappropriate. The Court suggested that discretion not to accept jurisdiction should be exercised when (a) the federal court would be called upon to resolve difficult questions of state law where there is little or no state authority on the subject, or (b) where the nature of the several claims and defenses would unduly complicate the case for the jury or for the court.

The complaint, as above noted, sounds in contract law and it has not been pointed out to the Court, nor does the Court perceive of any unusually difficult state law questions. At this stage of the trial, it does not appear that any undue complications will arise, either under the law or under the facts since the claims against the Company are merely incidental to the primary claims against GTS.

The plaintiff has an absolute right to have his claims against GTS decided by the United States Courts, and since both the power and the criteria for the positive exercise of discretion exists, the

Court will accept pendent jurisdiction in this case of the claims against the Company as well as the claims against GTS.

It is most important to note, however, that much is to be done in this case before judgment is finally entered for either party. The issue of pendent jurisdiction remains open throughout the litigation. United Mine Workers v. Gibbs, 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); Stamm v. Trigg, D.C., 368 F.Supp. 83, 89–90 (1973). As the case develops through pleadings, through discovery, through the presentation of evidence, through the argument of law on the charge to the jury, indeed, through the jury's verdict itself, the Court must continually revert to the discretionary criteria to determine whether it should retain jurisdiction.

For the above reasons, the motion to dismiss the complaint will be denied. An appropriate order shall issue.