John J. YOUNG and Adella Young, Plaintiffs,

v.

Daniel MALCOLM, Evalynne Braun, Holy Name Hospital, John Doe and Mary Roe (names being fictitious) employees of Holy Name Hospital, Defendants.

Civ. No. 80–2963.

United States District Court, D. New Jersey.

June 2, 1983.

Goldsmith & Tabak by Lee S. Goldsmith, Englewood, N.J., for plaintiffs.

Shanley & Fisher by Richard E. Brennan, Newark, N.J., for defendant Malcolm.

McDonough, Murray & Korn by Robert P. McDonough, Westfield, N.J., for defendant Braun.

Hein, Smith & Berezin by Milton Gurny, Hackensack, N.J., for defendant Holy Name Hosp.

## OPINION

BIUNNO, Senior District Judge.

The claims remaining in this case are by Mr. & Mrs. Young against Dr. Braun and Dr. Malcolm for alleged medical malpractice. There has also been a claim, from the time the complaint was filed, against Holy Name Hospital and several fictitious persons described as its employees.

The claims against Dr. Braun, a pathologist at Holy Name, and Dr. Malcolm, an internist specializing in hematology, are alleged on the basis of failure to adhere to medically accepted standards applicable to each of their fields. The claims against Holy Name and its fictitiously named employees are alleged in a separate paragraph grounding liability on deviation from accepted standards for hospitals.

At the call of May 3, 1982 the court raised the question of jurisdiction over the claim against Holy Name Hospital, in view of the fact that there was no dispute that the hospital came within N.J.S. 2A:53A–7 and 8, restoring the long-established "charitable immunity" doctrine except for allowing recovery of a maximum of $10,000 to beneficiaries, to whatever degree, as the result of any one accident.

Thus, at most, Mr. & Mrs. Young together, one suing for alleged personal injury and the other for derivative damages per quod, could not recover more than $10,000., aside from interest and costs. Even if each could claim $10,000. (which they cannot), their claims cannot be aggregated to support diversity jurisdiction, *Oliver v. Alexander,* 6 Peters 143, 31 U.S. 143, 8 L.Ed. 349 (1830); *Wheless v. St. Louis,* 180 U.S. 379, 21 S.Ct. 402, 45 L.Ed. 583 (1901); *Pinel v. Pinel,* 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (1916); *Lion Bonding v. Karatz,* 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871 (1923); *Thomson v. Gaskill,* 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *Zahn v. Int'l Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1974).

Thus, the $10,000. limit under New Jersey law falls short of the jurisdictional minimum, which requires that the amount in controversy *exceed* $10,000., not counting interest and costs, 28 U.S.C. § 1332(a).

The court informally ruled from the bench at the time and told the Hospital's attorney he could leave. However, before any order was drawn and entered, plaintiffs submitted a letter brief claiming that there was jurisdiction over the Hospital under *Jacobson v. Atlantic City Hospital,* 392 F.2d 149 (CA3, 1968). No ruling was made at the time because of reports of negotiations

between the parties which the court felt might be interfered with by a ruling. However, the negotiations have fallen through as to the private defendants, a peremptory date has been set for selection of a jury and the question had to be ruled on since the Hospital would participate in the selection or not depending on the question of jurisdiction. The parties were accordingly instructed to be prepared to make any further argument on the point before jury selection began.

The court then ruled that it had no jurisdiction over the Hospital and an order was signed dismissing the complaint against it on that ground pursuant to F.R.Civ.P. 12(h)(3), in accordance with the obligation and responsibility mentioned in *Wymard v. McCloskey,* 342 F.2d 495 (CA3, 1965) (en banc), where the court also pointed out, at p. 497, that " * * * absent federal jurisdiction, no judgment of a federal court can stand." And see, also, *Inventive Music Ltd. v. Cohen,* 564 F.Supp. 914 (D.N.J.,1982), after remand pursuant to 617 F.2d 29 (CA3, 1980). The order entered then recited that a written articulation of reasons would be filed, and this opinion does so.

*Jacobson v. Atlantic City Hospital,* 392 F.2d 149 (CA3, 1968) involved two claims, both based on negligence, one being a personal injury (survival) claim and the other a wrongful death claim, both arising from an incident in which plaintiff's decedent fell out of bed while in the hospital. The trial judge had granted the hospital's motion to dismiss for lack of jurisdiction as· to it in view of the limited liability under the statute, see 259 F.Supp. 836 (D.N.J., 1966), and had evidently expressly directed the entry of final judgment as to it on an express determination that there was no just reason for delay, F.R.Civ.P. 54(b), thus making the order appealable then and there.

The panel of the Court of Appeals reversed, taking the view that, so far as the complaint alleged that both the hospital and one physician were negligent in failing to supervise the patient in a way that would have prevented him from falling out of bed, there was a single "action" seeking in ex-

cess of $10,000., even though the liability of one of the two defendants so charged, the hospital, was limited to $10,000.

There was also a separate claim against the same doctor and another doctor, charging both (but not the hospital) with negligence in diagnosis and treatment, see 392 F.2d 149, at 153, note 1, which is a medical malpractice claim.

In any case, the Court of Appeals considered the question one to be decided on a flexible approach, exercising the court's best judgment in the light of many interacting factors for which the statement of a simple rule of thumb was impossible, see 392 F.2d at 155, especially note 6 and text accompanying it. The court then went on to find support in the analogous case of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a case involving "federal question" jurisdiction coupled with a pendent State-law claim.

The analogous support, however, was not accepted by the Supreme Court in *Owen Equipment v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), where a substantial majority declined to apply *Gibbs* to a case that had no "federal question" jurisdiction.

There, as here, the plaintiff selected the federal forum for the assertion of entirely state-law claims based solely on diversity, and was found not in a position to complain if the federal court, having limited jurisdiction, could not hear all the claims in one case. He could have brought his suit in State court and there obtained the efficiency sought, see 437 U.S. at 376, 98 S.Ct. at 2404.

In the present case, there was a period during which there was also a federal tort claim against the United States under 28 U.S.C. § 2671, et seq., with jurisdiction over that claim provided by 28 U.S.C. § 1346; but that claim is closed out and the only claims of plaintiffs that are left are the professional malpractice claims against the pathologist and the internist, and the general negligence claim against the Hospital. Thus, the situation is not unlike that in

*Owen* after Omaha Public Power District was out of the case, leaving only Kroger and Owen Equipment who were both citizens of Iowa even though the amount in controversy required was easily met.

Footnote 1 in *Owen* refers to *Joseph v. Chrysler Corp.,* 513 F.2d 626 (CA3, 1975) as in accord. *Joseph,* however, is an affirmance on judgment order without opinion in two cases decided below in 61 F.R.D. 347 (D.Pa., 1973), which does not even mention *Jacobson,* nor does *Owen.*

Other cases in the line are *Weiss v. Sunasco,* 316 F.Supp. 1197 (D.Pa.,1970), also involving a diversity claim below the jurisdictional minimum, and which distinguished *Jacobson; Seyler v. Steuben Motors,* 462 F.2d 181 (CA3,1972) which also distinguishes *Jacobson;* and *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), which lists *Jacobson* in note 29, but did not pass on the question it decided and was content to note that if there were power to hear the claim, the District Court properly exercised its discretion in declining to exercise pendent jurisdiction. The significance of that segment is somewhat diluted by the ruling in Part III that the same claim just decided to have been properly rejected came within the trial court's diversity jurisdiction. Under these conditions this court must assume that *Jacobson* is still binding on this court and on other panels of the Court of Appeals until reconsidered en banc. See, also, *Gallo v. Yamaha Motor,* 488 F.Supp. 502 (D.Pa.,1980), which tips its hat to *Jacobson* but does not find it applicable.

In the present case, *Jacobson* clearly does not apply by its own terms. The complaint charges the two doctors, Dr. Braun and Dr. Malcolm, in one paragraph directed to medical standards, and charges Holy Name (along with two fictitious employees never identified by discovery or otherwise) on the basis of *hospital* standards. These are quite different claims and cases because the controlling standards are bound to be different. The professional standards apply to those who practice medicine and this the hospital cannot do. For this reason it cannot be held to answer vicariously for conduct that involves the practice of medicine, even though it can be held vicariously for conduct which is part of hospital functions (such as preventing patients from falling out of bed).

It is noteworthy, too, that a review of all the discovery materials discloses nothing to suggest any performance failure on the hospital's part, but also indicates there was no claim made against the orthopedist who thought there should be a biopsy of the affected vertebra and took the sample, none against the laboratory physicians who administered the radiation treatments, and none against the head of the pathology department who supervised Dr. Braun.

Thus, aside from the inability to meet the jurisdictional minimum even by aggregation of the claims of the two plaintiffs, plaintiffs' discovery has not even attempted to obtain evidence to support the separate claim against the hospital and its unidentified, fictitiously named employees. It may be that this paragraph of the complaint was included to protect the claims in the event discovery turned up some kind of negligence on the part of the unknown employees for which the hospital could be held vicariously liable. At an early stage, dismissal may have been withheld while the factual history was developed.

But this has now been done, and it is more than a year since the court raised the jurisdictional question, with nothing more evident than before, even in the proposed requests to charge and lists of witnesses and exhibits.

The court is satisfied that it is bound by *Jacobson,* but that *Jacobson* does not govern in the particular facts and circumstances of this case, and, to the extent that the cases suggest the existence of discretion, the court exercises it against the retention of Holy Name Hospital.