Daniela GARCIA, et al., Plaintiffs,

v.

Dr. Robert J. GALLO, et al.,
Defendants.

Civ. No. 85–4997.

United States District Court,
D. New Jersey,
Newark Division.

Feb. 19, 1987.

Ronald D. Brown, Newark, N.J., for plaintiffs.

Hein, Smith & Berezin by Lawrence D. Smith, Hackensack, N.J., for defendant Hackensack Medical Center.

## OPINION

BARRY, District Judge.

Plaintiffs, an infant and her parents, the latter as guardians and also as individuals, bring this personal injury action against Dr. Robert J. Gallo; Hackensack Medical Center, a nonprofit charitable hospital; and various "John Does." The hospital now moves for dismissal for lack of subject matter jurisdiction. The motion will be granted.

On February 20, 1983, plaintiff Isabel Garcia was admitted to the hospital for the delivery of her child, plaintiff Daniela Garcia. Isabel was attended by Dr. Gallo and various hospital employees who are identified in the complaint as unknown "physicians, residents, interns, nurses[,] and other operating room personnel." Complaint at Count II, ¶ 4. Plaintiffs allege that because the doctor failed to "exercise the degree of care commonly exercised by other obstetricians in like cases," Complaint at Count I, ¶ 5, and because the attending staff failed to "exercise the degree of care commonly exercised by operating room personnel in like cases," Complaint at Count II, ¶ 5, the infant plaintiff has suffered severe, permanent, mental and physical injury. Plaintiffs filed this action in this court on October 21, 1985[1] alleging the aforementioned negligence and asserting as the jurisdictional base the diverse citizenship of the parties.

The narrow issue now before the court is whether a state statute which limits the liability of nonprofit hospitals precludes such an institution from being a defendant in a federal court suit based upon diversity. I hold that while the Supreme Court of the United States has not addressed this precise factual circumstance, the clear weight of the highest court's decisions in similar

---

1. The complaint on its face would appear to be defective for failure to file this action within the applicable state statute of limitations which bars actions for personal injury "accruing" more than two years before the filing of suit. *See* N.J.S.A. 2A:14–2. That defense is raised by the defendants in their respective answers. It is of course possible, and perhaps likely, that plaintiffs did not "discover" the infant's disabilities until some months after delivery. However, that assumption cannot be gleaned from the face of the complaint. While a plaintiff need not necessarily anticipate affirmative defenses, it would appear that the complaint is somewhat inartfully pled in that *fails* to alert the defendant as to the accrual date of plaintiffs' cause of action.

cases compels a conclusion that this court lacks jurisdiction over the hospital.

New Jersey Statutes Annotated 2A:53A–7 states in pertinent part:

No nonprofit corporation, society or association organized exclusively for ... hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association....

*Id.* The harshness of this "charitable immunity" statute is somewhat abrogated by N.J.S.A. 2A:53A–8 which allows for recovery of up to $10,000.00 in damages if the nonprofit defendant is "organized exclusively for hospital purposes." *Id.*

The hospital, relying solely on the Honorable Vincent P. Biunno's decision in *Young v. Malcolm*, 568 F.Supp. 839 (D.N.J.1983), contends that because the "charitable immunity" statutes necessarily bar any judgment against the hospital for an amount over $10,000.00, the minimum amount required by statute for diversity jurisdiction,[2] this court lacks subject matter jurisdiction over plaintiffs' claim against the hospital. While the *Young* decision does stand for that proposition and was, in my opinion, correctly decided, *Young* is not the only landmark on the jurisdictional landscape. With all due respect to the wisdom and scholarship of Judge Biunno, a full explication of this issue requires more than the defendant's citation to one decision of a court of concurrent jurisdiction.

An analysis of the applicable law with regard to this precise issue, at least in this circuit, should begin with *Jacobson v. Atlantic City Hospital*, 392 F.2d 149 (3d Cir. 1968). In that case, an executor of an estate brought a negligence suit against a nonprofit hospital and two physicians who attended the deceased during his hospitalization. The district court dismissed the complaint against the hospital based upon N.J.S.A. 2A:53A–7 and –8. In reversing the district court, the Court of Appeals noted that it had:

taken the lead in recognizing diversity jurisdiction over an entire lawsuit in tort cases presenting closely related claims based, in principal part at least, on the same operative facts and normally litigated together, even though one of the claims, if litigated alone, would not satisfy a requirement of diversity jurisdiction.

*Jacobson*, 392 F.2d at 153. Drawing support from the then recent case of *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the court concluded that where both the federal claim and the non-federal claim arose from the same "core of operative facts," the claims should be heard together. Here, the court noted, the defendant hospital and at least one of the doctors were "closely associated" with the events that allegedly caused the injury. Since the normal procedure if the suit had been brought in state court would have been to try the two claims together in one expeditious and convenient proceeding, the claims should be considered a "single" action within the court's diversity jurisdiction. *Jacobson*, 392 F.2d at 152.

The Third Circuit's self-professed role in being at the forefront of the trend toward recognizing jurisdiction over this type of claim did not escape notice by the Supreme Court. In *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596, *reh'g denied*, 412 U.S. 963, 93 S.Ct. 2999, 37 L.Ed.2d 1012 (1973), the Supreme Court made note of *Jacobson* as part of a general trend of the lower courts to hear pendent claims involving pendent parties where the case could be considered "whole" as defined by *Gibbs*. *Moor*, 411 U.S. at 713, 93 S.Ct. at 1797.

*Moor* involved a civil rights suit that sought to include a pendent state claim against a political subdivision which, after *Monroe v. Pape* [3], could not be a person

---

**2.** 28 U.S.C. § 1332(a)(1).

**3.** 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Although the Supreme Court would eventually overrule *Monroe* in *Monell v. New*

*York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Court has made clear that the jurisdictional principles expressed in *Moor* and the subsequent decision in *Aldinger*, see *infra*, were not altered. *Owen*

within the context of § 1983 and hence was not a proper party for purposes of federal question jurisdiction. Both the district court and the Ninth Circuit Court of Appeals had rejected the *Jacobson* line of cases and refused to find jurisdiction. While it affirmed the lower courts, the Supreme Court relied on those courts' alternative basis for decision,[4] expressly declining to squarely face the issue of "pendent parties."[5] The Court did pause to note that those cases, including *Jacobson*, that had followed the liberal trend of *Gibbs* had failed to note that *Gibbs* might be limited to its facts:

> There is a significant difference between *Gibbs* and [the liberal trend of expanding jurisdiction]. For the exercise of pendent jurisdiction over the claims against the county would require us to bring an entirely new party—a new defendant—into each litigation. *Gibbs*, of course, involved no such problem of a "pendent party."

*Moor*, 411 U.S. at 712–13, 93 S.Ct. at 1797–98.

Much of the doubt left by *Moor* was resolved by the Court's decision in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). The *Aldinger* court, after noting the unresolved issue in *Moor*, squarely addressed the issue of pendent defendants, at least within the context of the civil rights statutes. The Court framed the issue this way:

> [W]here nonfederal questions or claims were bound up with the federal claim upon which the parties were already in federal court, this Court has found nothing in Art. III's grant of judicial power

which prevented adjudication of the nonfederal portions of the parties' dispute. None of them, however, adverted to the separate question, involved in the instant case, of whether a nonfederal claim could *in turn* be the basis for joining a party over whom no independent federal jurisdiction exists, simply because that claim could be derived from the "common nucleus of operative fact" giving rise to the dispute between the parties to the federal claim.

*Aldinger*, 427 U.S. at 9, 96 S.Ct. at 2418 (emphasis in original). *But cf. Jacobson*, 392 F.2d at 154–55 (relying on *Gibbs* test).

The operating principle to be applied in resolving this question, according to then Justice, now Chief Justice, Rehnquist, was the limited jurisdiction of the federal courts whose proper bounds were "marked" by Congress. In cases in which *Gibbs* could not be applied—i.e., where the plaintiff sought to add a new defendant—the proper focus was the statute conferring jurisdiction. In *Aldinger*, the jurisdictional statute, 28 U.S.C. § 1343, conferred jurisdiction over actions "authorized by law." Because Congress had excluded counties from liability under § 1983, the jurisdictional statute would not work to give what Congress had expressly taken away. While the Court was careful to limit its decision to the civil rights statute, the Court's sweeping language made it clear that the court was dissatisfied with the growth of pendent jurisdiction after *Gibbs*.[6]

The dichotomy between the discretion to hear pendent claims between existing parties, as expressed in *Gibbs*, and the addition of new parties only when authorized by

---

*Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 372 n. 12, 98 S.Ct. 2396, 2402 n. 12, 57 L.Ed.2d 274 (1978).

**4.** The Court concluded that the district court had not abused its discretion by refusing to assert jurisdiction when the state law controlling the proposed pendent claim was unclear. *Moor*, 411 U.S. 716–17, 93 S.Ct. at 1799–1800.

**5.** The Court defined a "pendent party" as "the addition of a party which is implicated in the litigation only with respect to the pendent state law claim and not also with respect to any claim as to which there is an independent basis of

federal jurisdiction." *Moor*, 411 U.S. at 713, 93 S.Ct. at 1797. In the instant case the hospital is properly defined as a "pendent defendant."

**6.** In fact, *Aldinger* can be read to overrule *Jacobson sub silentio*. In the section of the Court's opinion at which the issue before the court is presented, the Court refers the reader to the cases cited in the *Moor* footnote that includes *Jacobson*. See *Aldinger*, 427 U.S. at 6 n. 5, 96 S.Ct. at 2416 n. 5. The Court's affirmance in *Aldinger* certainly seems to evidence disfavor of the cases cited in *Moor* for the opposite proposition.

statute, as expressed in *Aldinger*, was finally applied to the diversity statute in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). In that case, a resident of Iowa brought suit against a Nebraska-based corporation which brought a third party complaint against another corporation which at the time was also thought to be a Nebraska-based corporation. The plaintiff amended the complaint to also name the third party defendant. After the original defendant had successfully moved for summary judgment, it was revealed that the third party defendant had its principal place of business in Iowa, the plaintiff's domicile. In reversing the district court's decision to retain jurisdiction despite the lack of complete diversity, the Supreme Court once again, as it had in *Aldinger*, emphasized the need to scrutinize the statutory basis for jurisdiction.

The Court noted that 28 U.S.C. § 1332 had been consistently interpreted to require "complete" diversity. *Owen*, 437 U.S. at 373, 98 S.Ct. at 2402. Since Congress had made no attempt to amend the statute in the face of those authorities, this "mandate" could not be judicially set aside.

While the Court has not specifically addressed the second prong of the jurisdictional requisite fashioned by § 1332—in excess of $10,000 minimum amount in controversy—within the context of pendent defendants, it has made clear that in cases of pendent plaintiffs, each plaintiff must meet the statutory minimum. *Zahn v. International Paper Co.*, 414 U.S. 291, 294–95, 94 S.Ct. 505, 508–09, 38 L.Ed.2d 511 (1973); *see Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). In doing so the Court has stressed the importance of bowing to Congressional discretion in setting the jurisdictional amount. *Id.* at 338–40, 89 S.Ct. at 1057–59. Given the *Alding-*

*er-Owen-Zahn* line of cases it is inconceivable that the Court would countenance jurisdiction over a claim against a pendent defendant below the statutory minimum even if the parties were completely diverse.

The more recent and growing trend to narrowly construe statutory grants of jurisdiction renders *Jacobson* suspect as precedent. While the decision has not been overruled, it is inconsistent with subsequent authority.[7] Plaintiffs' reliance on it is therefore misplaced.[8] On the other hand, I do not rely on *Young* as heavily as defendant would have me do. *Young*'s distinction between legal standards applicable to hospitals and those applicable to doctors is somewhat strained and entirely unnecessary. As *Snyder* and its progeny make clear, the proper focus is § 1322 and the jurisdictional amount. Whatever the legal standard of care by which the hospital must abide—whether similar to that applied to doctors or radically different—the New Jersey legislature has determined that the hospital can not be made to answer in damages above $10,000. That alone must bar its status as a party defendant in this diversity action.

It is therefore concluded that plaintiffs' cause of action against the defendant Hackensack Medical Center must be dismissed for lack of subject matter jurisdiction.

The court will enter an appropriate order.

---

7. *See supra* note 6.

8. Plaintiffs' further argument that simply because they may not recover more than $10,000 against the hospital does not eviscerate their claim that they are entitled to more, is similarly unpersuasive. It has long been the rule that if it appears as a legal certainty that the plaintiff may not recover the amount demanded over the statutory minimum, the action must be dismissed. *See Barry v. Edmunds*, 116 U.S. 550, 6 S.Ct. 501, 29 L.Ed. 729 (1886); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 642 n. 10, 95 S.Ct. 1225, 1230 n. 10, 43 L.Ed.2d 514 (1975); *see also* C. Wright, The Law of Federal Courts 184 (1983).