**NATIONAL UNION FIRE INSURANCE CO.**

v.

**ALLFIRST BANK, et al.**

**No. CIV.A.WMN–02–1591.**

United States District Court, D. Maryland.

Oct. 7, 2002.

---

Robert W. Ludwig, Jr., Glenn J. Melcher, Michael J. Kresslein, Salvatore Scanio, Ludwig & Robinson, PLLC, Washington, DC, for plaintiff.

Matthew S. Sturtz, Jacqueline M. Wood, Miles & Stockbridge, PC, Baltimore, MD, for Allfirst Bank.

Stephen Keith Gallagher, Grady C. Frank, Jr., Rebecca E. Kuehn, LeClair Ryan, PC, Alexandria, VA, for First Union National Bank.

John S. Simcox, Karen Montgomery Crabtree, Simcox & Barclay, LLP, Annapolis, MD, for Chevy Chase Bank.

Dennis P. McGlone, Brian L. Moffet, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore, MD, for Suntrust Bank.

### *MEMORANDUM*

NICKERSON, Senior District Judge.

Before the Court is Defendant Bank of America's Motion to Dismiss for Lack of Subject Matter Jurisdiction. Paper No. 26. The motion is fully briefed. Upon a review of the motion and the applicable case law, the Court determines that the motion should be granted.

Plaintiff brought this subrogation action against five different banking institutions to recover monetary damages arising out of a check fraud scheme. This scheme is alleged to have been initiated by Steven Mack, a former employee of Kaiser Foundation Health Plan of the Mid–Atlantic States (Kaiser), one of Plaintiff's insureds. During a two month period from June 2000 to August 2000, Mack introduced into Kaiser's account payable stream a series of fraudulent invoices with forged approvals for payment. Kaiser issued 15 checks on these fraudulent invoices, totaling $985,867.94, which were then deposited into accounts opened by Mack and/or his accomplices at each of the Defendant banks. As grounds to transfer liability for these losses onto Defendants, Plaintiff alleges, *inter alia,* that each of these checks and the circumstances under which they were deposited presented sufficient irregularities and indicia of fraud that Defendants' acceptance of these checks constituted negligence.

Defendant Bank of America accepted a single check for $76,142.00. Prior to the filing of this lawsuit, however, Kaiser was able to recover $4,810.47 through an unrelated garnishment action. Thus, any recovery by Plaintiff from Bank of America is limited to $71,331.53. Bank of America has moved to dismiss the claims against it on the ground that Plaintiff's claims against it are, to a legal certainty, less than the amount in controversy required for this Court to exercise subject matter jurisdiction.

In responding to the motion, Plaintiff does not contest that its potential recovery against Bank of America is below the jurisdictional limit. Plaintiff argues, instead, that it can aggregate its claims against Bank of America with its claims against the other Defendants because all of the claims "derive from a common scheme." Opp. at 5. Thus aggregated, the total amount in controversy would be well above the jurisdictional limit of $75,000 set out in 28 U.S.C. § 1332. In making this argument, Plaintiff relies primarily on the Fourth Circuit's 1968 decision in *Stone v. Stone,* 405 F.2d 94 (4th Cir.1968), which, for the reasons stated below, this Court finds to be no longer good law.

In *Stone,* the Fourth Circuit did hold that the district court should have exercised jurisdiction over a claim against a defendant for less than the jurisdictional amount in controversy because it was joined with a claim against another defendant that was above that jurisdictional limit. *Id.* at 99. Noting that 28 U.S.C § 1332 gives the district courts jurisdiction over any " 'action' in which the 'matter in con-

troversy' exceeds $10,000," the court opined that the "critical inquiry is whether the entire lawsuit may be treated as an 'action' that meets the monetary test." *Id.* at 96. In answering that question, the Fourth Circuit relied heavily on the then recent Third Circuit decision in *Jacobson v. Atlantic City Hospital,* 392 F.2d 149 (1968), which in turn relied upon the Supreme Court's then recent decision in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

*Gibbs* was decided under 28 U.S.C. § 1331, the statute conferring federal question jurisdiction. The Supreme Court held that under the doctrine of pendent jurisdiction, a district court can adjudicate a state law claim brought with a federal claim if "the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" 383 U.S. at 725, 86 S.Ct. 1130. The *Stone* and *Jacobson* courts extended the holding in *Gibbs* in order to conclude that, if a claim below jurisdictional limits is joined with a claim that meets the jurisdictional limits, the district court may adjudicate the former claim "[i]f the entire lawsuit ... may be viewed as single constitutional 'case.'" *Stone,* 405 F.2d at 98.

Shortly after the Fourth Circuit decided *Stone,* however, the Supreme Court issued a pair of decisions that reaffirmed the long and well-established judicial interpretation of the diversity jurisdiction statutes that taught that separate and distinct claims cannot be aggregated. *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511

(1973). In *Snyder,* the Supreme Court held that in a class action where none of the plaintiffs' claims exceeded the jurisdictional amount in controversy, aggregation of the claims was impermissible and the federal court was without jurisdiction. In *Zahn,* the Court took the next "inescapabl[e]" step that followed from its decision in *Snyder,* that where the claim of a potential class member is insufficient to satisfy § 1332, the district court is without jurisdiction over that claim even if it is joined with the claim of another class member that is over the jurisdictional amount. 414 U.S. at 300–01, 94 S.Ct. 505.

Both *Snyder* and *Zahn* were decided in the context of class actions filed under Federal Rule 23. Nonetheless, the Court in both decisions made it abundantly clear that the holdings were based, not on any peculiarity of Rule 23, but instead, on "the Court's longstanding construction of the 'matter in controversy' requirement of § 1332." *Zahn,* 414 U.S. at 301, 94 S.Ct. 505; *see also, Snyder,* 394 U.S. at 338–339, 89 S.Ct. 1053. While noting that "it is linguistically possible, of course, to interpret the old congressional phrase 'matter in controversy' as including all claims that can be joined or brought together in a single suit through the class action device," the Court declined to abandon the "judicial interpretation of congressional language that has stood for more than a century and a half." *Snyder,* 394 U.S. at 338–339, 89 S.Ct. 1053. "We have consistently interpreted the jurisdictional statute passed by Congress as not conferring jurisdiction where the required amount in controversy can be reached only by aggregating separate and distinct claims." *Id.* at 338, 89 S.Ct. 1053.[1]

---

**1.** Courts have recognized a narrow exception to the non-aggregation rule where the defendants are jointly liable to the plaintiff. *See Jewell v. Grain Dealers Mut. Ins. Co.,* 290 F.2d 11, 13 (5th Cir.1961). Plaintiff makes a half-hearted argument that "each bank faces joint

liability for all fraudulent checks that were accepted by other banks," Opp. at 11–12, but acknowledges that this theory is not supported by the Complaint. *Id.* at 12 n. 3. The Complaint clearly asserts separate and dis-

Relying on *Snyder* and *Zahn,* courts and commentators have criticized the "impropriety" of decisions such as *Jacobson* and *Stone* that "attempted to avoid the rule against aggregation of claims in this situation by expanding the concepts of ancillary and pendent jurisdiction thereby giving the courts discretion to adjudicate the rights of parties who assert claims for less than $75,000 when they are joined with other parties whose claims exceed the jurisdictional amount and arise out of the same operative facts." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1659 at 461–64 (citing *Jacobson* and *Stone* at n. 38); *Hayfield v. Home Depot, U.S.A.,* 168 F.Supp.2d 436, 449 (E.D.Pa. 2001) ("The *Zahn* decision effectively held (without directly saying so) that *Jacobson* and similar cases, in the name of fairness, overemphasized efficiency and convenience, unjustifiably expanding the federal courts' limited jurisdiction."); *Garcia v. Gallo,* 665 F.Supp. 360 (D.N.J.1987) ("Given the *Aldinger*[2]*-Owen*[3]*-Zahn* line of cases it is inconceivable that the Court would countenance jurisdiction over a claim against a pendent defendant below the statutory minimum even if the parties were completely diverse."). Thus, while *Stone* has never been expressly overruled on this point, this Court is convinced that it would be, were the issue to be placed squarely before the Fourth Circuit.

Finding that there is no subject matter jurisdiction over Plaintiff's claims against Defendant Bank of America, the Court will grant the pending motion, dismissing Bank of America from this action.

---

tinct claims against each defendant, seeking to hold each bank severally liable only for the specific check or checks that it accepted. Thus, the Court finds that Plaintiff's claims, as pled, do not fit within the narrow exception to the non-aggregation rule.

2. *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

3. *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).